THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* GEORGE HOPE, Appellant.

(Argued June 11, 1931; decided July 15, 1931.)

*Michael ɪ. Winter* for appellant. The prosecution failed to prove the offense charged in the indictment. (Penal Law, § 1250; *People ex rel. Municipal Gas Co.* v. *P. S. Comm.*, 224 N. Y. 156; *Horn* v. *Klugman*, 112 Misc. Rep. 171; *People* v. *Camp*, 139 N. Y. 87; 1 Whart. Cr. Law, § 297; *People* v. *Tohman*, 2 Barb. 216; *State* v. *Cord*, 34 N. H. 515; *People* v. *Ryan*, 232 N. Y. 234; *People* v. *Santoro*, 229 N. Y. 277; *Dehn* v. *Mandeville*, 68 Hun, 335; *Hadden* v. *People*, 25 N. Y. 373; *People* v. *Harrison*, 261 Ill. 517; *Mayo* v. *State*, 43 Ohio St. 567; *Ross* v. *State*, 15 Fla. 55; *State* v. *Sutton*, 116 Ind. 527; *Commonwealth* v. *Nickerson*, 5 Allen, 518; *People* v. *Black*, 147 Cal. 426; *Matter of Keil*, 85 Cal. 309; *State* v. *Leuth*, 128 Iowa, 189; *People* v. *De Leon*, 109 N. Y. 226; *Smith* v. *State*, 63 Wis. 453.)

*Thomas C. T. Crain, District Attorney* (*Robert C. Taylor* and *Felix C. Benvenga* of counsel), for respondent. The crime charged was fully proved. (*People* v. *Sugarman*, 248 N. Y. 255; *Smith* v. *State*, 63 Wis. 453; *State* v. *Leuth*, 128 Iowa, 189; *People* v. *Camp*, 139 N. Y. 87; *Matter of McDonald*, 50 Mont. 348; *Limbeck* v. *Gerry*, 15 Misc. Rep. 663; *Hadden* v. *People*, 25 N. Y. 373; *People* v. *Harrison*, 261 Ill. 517; *People* v. *Fisher*, 30 Cal. App. 135; *State* v. *Newman*, 127 Minn. 445; *People* v. *Davis*, 56 N. Y. 95; *Bork* v. *People*, 91 N. Y. 5; *People* v. *Herlihy*, 66 App. Div. 534; 150 N. Y. 184; *People* v. *Bennett*, 182 App. Div. 871; *People* v. *Abeel*, 182 N. Y. 415; *People* v. *Hamilton*, 183 App. Div. 55; 230 N. Y. 577.)

HUBBS, J. About one o'clock in the morning of March 22, 1930, Lawrence McCarthy, a young boy, and

his brother-in-law, Vincent Klemmer, were on Forty-third street, New York city, in front of McCarthy's home. They were about to enter an automobile, a Buick coupe, to go on an errand. McCarthy entered the car and seated himself at the wheel. Klemmer took the seat beside him. At that time, three men, whom they did not know, stepped up to the car. They ordered McCarthy to get into the rumble seat, and Klemmer to drive the car. Two of the strangers got into the car and sat on the front seat with Klemmer and one on the rumble seat with McCarthy. One of the men placed a gun against Klemmer, and frightened him. He was ordered to drive ahead and keep his eyes forward or they would blow his head off. One of the men, referring to McCarthy, said, " if he moves, let him have it." They told Klemmer to drive to Long Island. He started the car and drove it about a mile when he saw a police booth at Columbus Circle. He gave the car a sudden turn and hit the booth and stopped the car. The three strangers jumped out and ran. The policeman in the booth saw the defendant sitting on the front seat of the car and succeeded in capturing him after he had jumped out and run a short distance. The other two strangers escaped. The defendant was indicted for kidnapping and has been convicted.

No one can read the record in this case without arriving at the conclusion that the defendant is guilty beyond a reasonable doubt. Several grounds are urged as reasons why the judgment of conviction should be reversed. We have examined all of them and are satisfied that under the facts in this case none of them require a reversal. In fact, most of the grounds urged were not raised by proper exceptions, and, therefore, do not constitute cause for reversal in this court. The only question which we deem it necessary to consider is whether there is any evidence which sustains the charge of kidnapping as defined by section 1250 of the Penal Law which reads:

" § 1250. Kidnapping defined. A person who wilfully: 1. Seizes, confines, inveigles, or kidnaps another, with intent to cause him, without authority of law, to be secretly confined or imprisoned within this state, or to be sent out of the state, or to be sold as a slave, or in any way held to service or kept or detained, against his will; * * * Is guilty of kidnapping."

Kidnapping was a crime under the common law of England, and was defined by Blackstone (Vol. 4, p. 219) as " the forcible abduction or stealing away of a man, woman, or child, from their own country and sending them into another." Under the common law of England it was a misdemeanor punishable by fine, imprisonment and pillory. The common-law definition was extended in England at a very early day. (*People* v. *Camp*, 139 N. Y. 87.) The crime is now defined by statutes, in all of our States, which have greatly enlarged the cases where conviction may be had. (*Smith* v. *State*, 63 Wis. 453; *People* v. *Camp, supra.*)

The present statute, section 1250 of the Penal Law, is a revision of 2 Revised Statutes, 664, section 28. (*Hadden* v. *People*, 25 N. Y. 373.)

The crime both under the English common law and the statute embraces all the elements of assault and false imprisonment. (2 Bishop on Criminal Law [9th ed.], § 750.)

False imprisonment is an offense not made criminal by our law except in the case of a police officer. (Penal Law, § 1844; *Smith* v. *State, supra.*)

The indictment charges: " The said defendant, in the County of New York aforesaid, on the twenty-second day of March, nineteen hundred and thirty, did feloniously and wilfully seize, confine, inveigle and kidnap another, to wit, one Lawrence McCarthy, with intent to cause him, the said Lawrence McCarthy, without authority of law and against his will, to be secretly confined, detained and imprisoned within the State of New York; against

the form of the statute in such case made and provided and against the peace of the People of the State of New York and their dignity."

The evidence establishes beyond question that McCarthy was willfully seized and confined in the automobile without authority of law.

It is not necessary in order to constitute the crime that actual force or violence be used. Such a narrow construction of the statute would render it nugatory. A threat to kill, coupled with the possession of a deadly weapon and apparent power to carry out the threat, is equivalent to the use of actual violence. The crime is frequently committed by the use of threats and intimidation which overcome the will of the victim and secure the control of his person without his consent and against his will.

It is contended by appellant that there was failure upon the trial to establish the criminal intent required under the statute, that is, that the seizure and confinement in the car was " with intent to cause " the one kidnapped " to be secretly confined or imprisoned within this state " and " in any way held to service or kept or detained, against his will." Specifically, the claim of the appellant is that in order to constitute the crime " detention alone is insufficient unless coupled with an intent to ' hold to service and keep.' "

Under the statute there must be a specific criminal intent to cause the victim " to be secretly confined, or imprisoned within this state, or to be sent out of the state, or to be sold as a slave, or in any way held to service or kept or detained against his will." The intent with which the victim was seized and confined is material, of the essence of the crime and must be set out in the indictment and established upon the trial. (*Hadden* v. *People, supra; State* v. *Leuth*, 128 Iowa, 189; *State* v. *Newman*, 127 Minn. 445.)

The intent need not be established by direct proof. It

may be shown by circumstantial evidence. Its existence constitutes a question of fact for the determination of the jury if there is any evidence tending to establish it.

In the case at bar the willful and unlawful seizure and confinement was established by direct evidence. The jury has found upon sufficient evidence that such seizure and confinement was unlawful, willful and with the intent to secretly confine, imprison and detain McCarthy against his will, within the State. It has not found, nor would it have been justified in finding, that the seizure and detention was with the intent to hold to serve. Such a finding was not necessary to sustain a conviction.

The statute must be given a reasonable construction in order to promote the efficient enforcement of the criminal law, to prevent crime and to promote the ends of justice. The object of the statute and of the common law on the subject was the same, to secure the personal liberty of citizens and to secure to them the assistance of the law necessary to release them from unlawful restraint. (*Smith* v. *State, supra; People* v. *Camp, supra.*)

The statute defining kidnapping in Minnesota is almost identical with section 1250 of the Penal Law. In the case of *State* v. *Newman* (127 Minn. 445) the court held that the willful and unlawful seizing of a person with the intent to cause him to be secretly confined or imprisoned within the State constituted the crime of kidnapping. We are satisfied that such is the proper construction of the statute, and that it is unnecessary to prove an intent " to hold to serve " as contended by the appellant. It was sufficient to charge and prove that the defendant willfully and unlawfully seized McCarthy, against his will, and confined and kidnapped him with intent to cause him to be secretly confined, detained or imprisoned within this State. All of those elements were established to the satisfaction of the jury. The intent was evidenced by the fact that he was secretly seized in the night time by use of a gun and actually imprisoned, confined and restrained in the automobile.

The appellant urges that the case of *People* v. *Camp* (*supra*) holds to the contrary. In that case, the father of an adult daughter living with him, alleging that she was insane, went to the County Judge and stated the case to him. Two physicians were appointed to examine her. They examined her and certified under oath that she was insane. The Judge approved the certificate. She knew that she had been adjudged insane and was to be taken to an asylum and she was taken in the day time without using force. She went voluntarily. This court decided that even though she was never insane, and the father knew it and used the forms of law from improper and malicious motives, nevertheless, he was not guilty of the crime of kidnapping — that there was no secret confinement within the State as required by statute. The court said: " When the person seized or inveigled is not removed from the state, the intent must be secret confinement within the state. When the person is seized and removed in broad daylight over public highways and railroads in the presence and view of many people, and taken to a public asylum, where there are public officials, numerous physicians and other people, there certainly is no secrecy about the transaction, and it bears no resemblance to what has always been understood to be kidnapping " (p. 92).

There can be no question but that the decision in that case was correct upon principle and authority. This case is entirely different. McCarthy was secretly seized in the night under circumstances calculated to terrify him. His captors had guns which they threatened to use to kill him with if he moved. They forced him to take the rear seat in the car. They apparently intended to take him in the car to Long Island as Klemmer was told to drive there. They had complete control of his person; he was confined and imprisoned in the car. That was not a mere assault or imprisonment. He was secretly confined and imprisoned because his captors were concealing their pur-

pose from the public by compelling Klemmer and McCarthy to appear to be willing participants in the automobile ride, when in fact they were compelled upon the threat of death to act as they did.

The confinement and detention in the automobile for a short time, coupled with the intent, brings the case within the purview of the statute. (*State* v. *Leuth, supra.*)

It seems clear that under the common understanding of the term " kidnapping " the defendant is guilty of the crime charged and the facts bring the case within the spirit and intent of the statute.

The judgment should be affirmed.

KELLOGG, J. (dissenting). Doubtless, to " kidnap," according to popular usage, is " to carry (any one) away by unlawful force or by fraud, and against his will." (Webster's International Dictionary.) However, we are not now dealing with a case involving the popular use of words. Nor is it enlightening that according to the concept of the common lawyer, " kidnapping " was " the forcible abduction or stealing away of a man, woman, or child from their own country and sending them into another " (Blackstone, vol. 4, p. 219), or that to " kidnap " originally meant " to carry off (a child or other person) to enforced service or labor on the plantations of the British colonies in America. See kid, a servant." (Webster's International Dictionary.) Our decision must be controlled by the definition of kidnapping given in the statute which makes the act a crime. A person is guilty of kidnapping not merely if he " seizes, confines, inveigles, or kidnaps another," but only if he so does " with intent to cause him, without authority of law, to be secretly confined or imprisoned within this state," or " to be sent out of the state, or to be sold as a slave, or in any way held to service or kept or detained, against his will." (Penal Law, § 1250.) Self-evidently, the person accused, to be guilty, must not merely seize or kidnap,

in the popular sense of these words, with intent so to do; he must so seize or kidnap with an ultimate purpose of accomplishing something more than the mere seizure. Secret confinement or imprisonment within the State; slavery or bondage or detention without the State — the accomplishment of some one of either of these two sets of purposes must have been aimed at by the seizure. Certainly slavery or bondage without the State was not intended. Nor is there proof, direct or inferential, that secret confinement within the State was the objective of the defendant. Therefore, I think the crime charged was not established.

CARDOZO, Ch. J., POUND, CRANE, LEHMAN and O'BRIEN, JJ., concur with HUBBS, J.; KELLOGG, J., dissents in opinion.

Judgment affirmed.