THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* HARRY WEISS, Alias HANK SPINDELLIO, and MARTIN SCHLOSSMAN, Alias JACK, Appellants.

Second Department, November 19, 1937.

464

*Irwin N. Wilpon,* for the appellants.

*Henry J. Walsh, Assistant District Attorney [William F. X. Geoghan, District Attorney,* with him on the brief], for the respondent.

JOHNSTON, J. Appellants were convicted of the crime of kidnapping. The statute (Penal Law, § 1250), so far as material, provides:

" A person who wilfully:

" 1. Seizes, confines, inveigles, or kidnaps another, with intent to cause him, without authority of law, to be confined or imprisoned within this State, or to be sent out of the State, or to be sold as a slave, or in any way held to service or kept or detained, against his will;  *  *  *

" Is guilty of kidnapping."

Each was sentenced to imprisonment in the State prison at Ossining under an indeterminate sentence, the minimum of which shall be not less than twenty years and the maximum of which shall be for his natural life. Appellants and three others — Murray Bleefeld, Ellis Parker, Sr., and Ellis Parker, Jr.— were jointly indicted. The indictment charges: " The defendants from February 14, 1936, to February 24, 1936, inclusive, in the County of Kings, did commit the crime of kidnapping, in that the said defendants on the said 14th day of February, 1936, in the County of New York, State of New York, did seize one Paul H. Wendel, against his will and without authority of law, and thereupon and on the said 14th day of February, 1936, did take the said Paul H. Wendel, against his will and without authority of law, into the County of Kings, State of New York, where he was confined, inveigled and detained until the 24th day of February, 1936, against his will and without authority of law."

The facts are as follows: Parker, Sr., chief of the county detectives of Burlington county, N. J., in the course of his investigation into the Lindbergh kidnapping case, came to suspect Paul H. Wendel — his friend of many years — as kidnapper and murderer of the Lindbergh child. Wendel, at the time, was living at the Hotel Stamford in New York county. Parker desired to apprehend Wendel and to detain him for the purpose of obtaining a confession that he was the kidnapper and murderer. He enlisted the services of Bleefeld, whom he knew and to whom he unfolded his reasons for suspecting Wendel, and, through Bleefeld, appellants were contacted. The elder Parker, in the development of the plot which

found Wendel eventually a prisoner, remained entirely in the background. The younger Parker, however, participated openly in the plot.

On February 14, 1936, pursuant to a prearranged plan, appellants Bleefeld and the younger Parker waited outside the Hotel Stanford to seize Wendel. Bleefeld had rented an automobile and Schlossman was the driver. When Wendel appeared Bleefeld and Weiss approached him and, after telling him he was wanted for questioning, requested he go with them. Wendel testified that Weiss produced a gun and, under compulsion, he entered the car. Appellants said they used neither a gun nor force. Wendel, Weiss and Bleefeld entered the rear of the automobile and Schlossman drove them to his home at Sheepshead Bay, Kings county, in the basement of which a room had been prepared for Wendel. The younger Parker followed in his automobile and, unknown to Wendel, took personal charge of the attempt to extort from Wendel a confession, which was to exculpate the convicted Bruno Hauptmann in New Jersey and bring ultimate fame to the Parkers.

Wendel was detained in the basement for a period of ten days. During his confinement, and in order to induce his confession, Wendel was subjected to indignities, privations and physical punishment, the nature of which it is unnecessary to describe. For days he endured these outrages, but finally succumbed and made a written confession of his guilt as the kidnapper and murderer of the Lindbergh baby. The confession was delivered to the younger Parker and finally to the elder Parker in New Jersey, where Wendel was taken on February twenty-fourth. The case against Wendel, based upon this confession, collapsed, and subsequently appellants, together with Bleefeld and the two Parkers, were indicted in Kings county for the kidnapping of Wendel. The indictment originally contained two counts, the first charging kidnapping and the other assault in the second degree, committed with intent to commit the crime of kidnapping. The Governor of New Jersey, where the Parkers resided, denied an application for the extradition of the Parkers. A second request for their extradition is still pending. When the indictment was moved for trial in February, 1937, only three defendants — Weiss, Schlossman and Bleefeld — appeared, and the case proceeded against them. During the trial Bleefeld pleaded guilty to the first count, charging kidnapping, and is now at liberty, under bail, pending sentence. At the close of the People's case the court dismissed the second count charging assault in the second degree, and the only charge submitted to the jury as to the remaining two defendants, appellants herein, was that embraced in the first count. The jury disagreed. At the

second trial, which is the subject of this review, appellants were found guilty.

Bleefeld and appellants previously had testified before the grand jury, under waivers of immunity, and had confessed their separate and collective parts in the kidnapping. Upon the trial the appellants' grand jury testimony was read. Bleefeld testified for the People.

No one can read this record without concluding that defendants are guilty beyond a reasonable doubt. Appellants assign several grounds as reasons why the judgments of conviction should be reversed. We have examined all of them and are satisfied that, under the facts, most of which are not in dispute, the judgments must be affirmed.

Appellants attack the sufficiency of the indictment and contend that, under the statute, a specific criminal intent to cause the victim to be confined is an essential element of the crime of kidnapping, and must be pleaded. They urge that, since the indictment fails to allege such specific intent, it is insufficient in law. There can be no doubt that when a particular intent accompanying an act is requisite to constitute a crime, it should be alleged. It is likewise true that, under the statute, to constitute the crime of kidnapping there must be the willful and unlawful seizing of a person against his will with intent to cause him to be confined, imprisoned or detained within the State. (*People* v. *Hope*, 257 N. Y. 147, 152; *Hadden* v. *People*, 25 id. 373.) In *People* v. *Hope* (*supra*) there are dicta to the effect that the intent with which the victim was seized and confined must be pleaded. I believe the absence of such an allegation is not fatal where, as here, it is alleged that on February fourteenth Wendel was seized against his will and without authority of law and actually confined and detained against his will and without authority of law until February twenty-fourth. The statute requires seizure with intent to confine. Seizure alone is not sufficient. But where seizure and actual confinement against the victim's will and without authority of law are alleged, the unlawful intent appears, it is implicit in the indictment, and the crime defined by the statute is sufficiently pleaded, and if those facts are established the crime is proven. In determining the sufficiency of an indictment the test is: Does it identify the charge against the defendant so that his conviction or acquittal will bar a subsequent charge for the same offense; does it notify him of the nature and character of the crime with which he is charged so as to enable him to prepare his defense and to permit the court to pronounce judgment according to the right of the case? (*People* v. *Farson*, 244 N. Y. 413; *People* v. *Williams*, 243 id. 162.) In

applying this test courts should be liberal, not technical. Thus construed, the indictment is sufficient and the defendants were not prejudiced by the failure to plead the crime charged in the identical words of the statute. To hold otherwise "would be to sacrifice substance to form, and abandon much that has been accomplished to simplify procedure upon criminal trials." (*People* v. *Marcus*, 235 App. Div. 397, 400.)

Appellants also contend the court erred in excluding testimony which, they assert, tended to show their intent in committing the acts charged. The questions excluded were designed to show that appellants believed they were acting under authority of law and to accomplish a noble purpose. The following questions are typical: " Did you believe * * * at the time when you entered to play some part in this alleged kidnapping, that Ellis Parker, Sr., was a great detective? " " Did you believe that he had full power to act? " " Did you desire to help a detective solve any part of the Lindbergh mystery at that time? " " Did you think at that time that you were taking part in some noble work? " " Did you think you were serving your State? " These questions were excluded upon the ground that appellants' state of mind was immaterial. There is a clear distinction between intent and motive or ultimate object. As was said by Chief Judge CULLEN in *People ex rel. Hegeman* v. *Corrigan* (195 N. Y. 1, 12): " Doubtless, to constitute perjury there must be criminal intent, but intent must be distinguished from motive and from ultimate object. As was said by Judge WERNER in *People* v. *Molineux* (168 N. Y. 264, 297): ' In the popular mind intent and motive are not infrequently regarded as one and the same thing. In law there is a clear distinction between them. Motive is the moving power which impels to action for a definite result. Intent is the purpose to use a particular means to effect such result.' (See, also, Burrill's Law Dictionary, vol. 1.) ' Motive is that which incites or stimulates a person to do an act. * * * Motive is never an essential element of a crime. A good motive does not prevent an act from being a crime.' (Clark's Crim. Law, sec. 14.) " With this distinction in mind, affirmative answers to the above questions would not negative an intent to confine Wendel against his will, but would tend to show that appellants were actuated by honorable motives. In other words, appellants, while admitting they intended to and did confine Wendel against his will, sought to show that they believed they were acting lawfully and honorably. Such testimony is of no avail to appellants, and was properly excluded. (*People ex rel. Hegeman* v. *Corrigan, supra.*) For the same reasons the statements of the trial judge to the effect that the state of mind of the

appellants had nothing to do with the case were not, as claimed by appellants, prejudicial, but reflect a complete and correct understanding of the law applicable, as set forth in the case just cited.

Appellants claim that the charge was unfair and equivalent to a direction of a verdict of guilty. There is no basis for this criticism. Mindful of the fact that both appellants admitted their participation in the crime and that one of their confederates testified for the State, the court, in my opinion, fairly reviewed the facts and accurately applied the law. While appellants attack several parts of the charge, their principal grievance seems to be that the court charged that, even if appellants believed that Parker had authority to deputize them to take Wendel into custody, such belief was no defense. As previously pointed out, *People ex rel. Hegeman* v. *Corrigan (supra)* is authority for such a charge. Nor is there any merit to the contention that the court did not impartially submit the issue of intent to the jury. An examination of the charge reveals that the court repeatedly pointed out that the acts of the appellants must have been intentional and they could not be convicted unless the jury found there was a criminal intent to confine Wendel against his will.

Appellants also urge the court erred in refusing to charge, as requested, that appellants might be found guilty of the crime of assault in the second degree. As previously stated, the count charging assault was struck from the indictment. There are two sections of the Code of Criminal Procedure permitting a conviction for a lesser crime than that charged in the indictment. Section 444 provides: " Upon an indictment for a crime consisting of different degrees, the jury may find the defendant not guilty of the degree charged in the indictment, and guilty of any degree inferior thereto, or of an attempt to commit the crime." Section 445 provides: " In all other cases, the defendant may be found guilty of any crime, the commission of which is necessarily included in that with which he is charged in the indictment."

There are no degrees of kidnapping and, therefore, section 444 has no application. Appellants claim the refusal to charge as requested was error because the crime of assault in the second degree is " necessarily included " in the crime of kidnapping. In support of this contention appellants cite *People* v. *Hope (supra)*, where the court said: " The crime [kidnapping] both under the English common law and the statute embraces all the elements of assault and false imprisonment." The refusal to charge as requested obviously was based upon the fact that under the evidence the elements of kidnapping were not only established but admitted. It is true there can be no kidnapping without assault, because the

unlawful seizure constitutes the assault. It is also true that one who assaults another with intent to commit a felony is guilty of assault in the second degree. But one who assaults another with intent to cause him to be unlawfully confined is not guilty of assault in the second degree, but of kidnapping. Therefore, as there was no possible view of the facts that would justify any other verdict except a conviction or acquittal of the crime charged, it was not error to refuse to charge that the defendants might be convicted of assault in the second degree.

Appellants claim it was error to permit Wendel to testify to the assaults committed by them on him while he was confined in Kings county. Appellants say these assaults were not part of the kidnapping, but were separate and independent crimes and, therefore, testimony in connection with them was inadmissible. It is the general rule that on a prosecution for one crime the People cannot prove any crime not alleged in the indictment, either as a foundation for a separate punishment or as aiding the proofs that he is guilty of the crime charged. (*People* v. *Molineux*, 168 N. Y. 264, 291.) But it is also the rule that, where such evidence is relevant and material on the guilt of the prisoner of the crime for which he is upon trial, it is admissible even though it also proves him guilty of another crime. (*People* v. *Pallister*, 138 N. Y. 601; *Hope* v. *People*, 83 id. 418.) In the case first cited the court, referring to such testimony, said: " It was one of those surrounding circumstances which related to and illustrated the principal fact, and therein lay the principle of its admissibility." In the instant case the testimony of the assaults perpetrated upon Wendel while he was confined was not offered for the purpose of proving appellants guilty of crimes separate and independent of the crime charged, but as part of the history of that crime and to illustrate the principal fact, to wit, that appellants seized and confined Wendel with the criminal intent to confine him. The testimony was properly admitted.

Appellant Weiss testified he signed a waiver of immunity and testified before the grand jury pursuant to a conversation he had had with an assistant district attorney while on a train *en route* from Cleveland to New York, in which the latter promised he would see that Weiss would not serve any time in jail in return for such testimony. To refute this evidence, the assistant district attorney, who tried the case for the People, did not testify, but called as witnesses Detective Kissane and Lieutenant Donovan. Both said they were present on the train at all conversations between Weiss and the assistant district attorney and at no time did the latter make such a promise. The court, in its charge, submitted

to the jury as a question of fact whether such a conversation took place. Appellants requested a charge that the failure of the assistant district attorney to deny he made such a promise would justify the jury in inferring that his testimony would be unfavorable to the People. The court declined, and appellants assign this as error. This is frivolous. The People called two witnesses to rebut Weiss. The failure to call the third did not subject the People to any adverse inference. (*Perlman* v. *Shanck*, 192 App. Div. 179.)

There are other rulings, particularly in the reception and rejection of evidence, of which appellants complain. If erroneous, they are merely technical errors which do not affect the substantial rights of appellants and could not possibly have influenced the verdict. They may be disregarded under section 542 of the Code of Criminal Procedure.

Appellants' guilt was established not only beyond a reasonable doubt but beyond all doubt. In fact, they admitted their guilt before the grand jury as well as at the trial. It may be that the Parkers concocted the plan to kidnap Wendel and extort a confession from him, but the appellants were not the unsuspecting dupes they profess to be, but willing participants in the crime of which they stand convicted.

The judgments of conviction should be affirmed.

HAGARTY, DAVIS and CLOSE, JJ., concur; TAYLOR, J., dissents and writes for reversal and a dismissal of the indictment without prejudice to a new trial upon a sufficient indictment.

TAYLOR, J. (dissenting). I dissent and vote to dismiss the indictment upon the ground that it does not state facts sufficient to constitute the crime of kidnapping (Penal Law, § 1250, subd. 1), and should have been dismissed on defendants' motion at the trial. Such a dismissal, if ordered, would not preclude further prosecution of the defendants under a new and sufficient indictment, if one should be found by proper authority — this upon plain principles related to the doctrine of former jeopardy. (*Vide People ex rel. Bullock* v. *Hayes*, 166 App. Div. 507; affd., 215 N. Y. 172.)

Assuming, however, without conceding, the sufficiency in law of the indictment, the record is replete with errors committed on the trial, so substantial and so prejudicial to the rights of each defendant that they may not be regarded as being within the purview of section 542 of the Code of Criminal Procedure; and a new trial upon a sufficient indictment is in order. The trial as a whole was unfair to the defendants, regardless of what they did to the complaining witness, Wendel. It is inferable from the record that they used

inquisitorial and so-called third-degree methods in their treatment of him. This circumstance, however, does not deprive them of their right to a fair trial upon a sufficient indictment. We have not hesitated, upon proper occasion in the past, even in cases where the odor of criminality appeared to envelop a given defendant, to order a new trial, nor have we omitted to register our proper protest in such a case and when the record disclosed disregard of the rights of the defendant. This case is in the same category. It should be disposed of in the same way.

(a) The indictment is clearly insufficient and should have been dismissed. Section 1250 of the Penal Law, subdivision 1, reads as follows:

" § 1250. Kidnapping defined.

" A person who wilfully:

" 1. Seizes, confines, inveigles, or kidnaps another, with intent to cause him, without authority of law, to be confined or imprisoned within this State, or to be sent out of the State, or to be sold as a slave, or in any way held to service or kept or detained, against his will; * * *

" Is guilty of kidnapping, which is a felony."

The indictment reads as follows: " The defendants from February 14, 1936, to February 24, 1936, inclusive, in the County of Kings, did commit the crime of kidnapping, in that the said defendants on the said 14th day of February, 1936, in the County of New York, State of New York, did seize one Paul H. Wendel, against his will and without authority of law, and thereupon and on the said 14th day of February, 1936, did take the said Paul H. Wendel, against his will and without authority of law, into the County of Kings, State of New York, where he was confined, inveigled and detained until the 24th day of February, 1936, against his will and without authority of law."

Upon comparing the terms of the statute with the allegations of the indictment, we find that the specific intent absolutely essential to the crime of kidnapping, viz., " intent to cause him, without authority of law, to be confined or imprisoned within this State, * * * or in any way held to service or kept or detained, against his will," is missing therefrom. It should have been, but was not, alleged. Nor was that requisite specific intent impliedly alleged. The indictment is insufficient in law and fatally defective. The particular intent must be alleged. (*People* v. *Lohman*, 2 Barb. 216, 218, 219; affd., 1 N .Y. 379.) " The offence was created by the statute; and in such cases it is well settled that the statutory description [meaning of the crime charged] should be embodied

in the indictment." (*Id.*; and read *People* v. *Cooper*, 3 N. Y. Cr. Rep. 117, 118, and the recent case of *People* v. *Hope*, 257 N. Y. 147, at p. 151.)

In *People* v. *Hope* (*supra*) Judge HUBBS said: "Under the statute there must be a specific criminal intent to cause the victim 'to be secretly confined, or imprisoned within this State, or to be sent out of the State, or to be sold as a slave, or in any way held to service or kept or detained against his will.' The intent with which the victim was seized and confined is material, of the essence of the crime and must be set out in the indictment and established upon the trial. [*Hadden* v. *People*, 25 N. Y. 373; *State* v. *Leuth*, 128 Iowa, 189; *State* v. *Newman*, 127 Minn. 445.]"

It is true that in *People* v. *Hope* the indictment was sufficient in form and was not under specific attack. This makes the utterance of Judge HUBBS mere dictum. However, it is dictum helpful to the appellants because it states what is the well-settled law relating to indictments. (See, also, *United States* v. *Green*, 136 Fed. 618, 652; affd., 199 U. S. 601; *Dehn* v. *Mandeville*, 68 Hun, 335, 337.) What an indictment must contain in the interests of substantial justice was stated by CRANE, J., in *People* v. *Zambounis* (251 N. Y. 94, 97): "The requirement that an indictment and an information must state the crime with which a defendant is charged, and the particular acts constituting that crime is more than a technicality; it is a fundamental, a basic principle of justice and fair dealing, as well as a rule of law." The defendants are entitled to a dismissal of this indictment.

(b) Testimony of the defendants bearing upon their specific intent in doing what they did to Wendel was erroneously excluded. Answers to numerous questions in this phase (Schlossman's testimony, fols. 1045–1046, 1070, 1077, 1082; Weiss' testimony, fols. 1168–1174; 1211–1212; 1184, 1186, 1222) were excluded. This was manifest error. In a case involving, as one of its essentials, specific intent, the accused may "testify in his own behalf as to what his intent was in doing the act." (FULLER, Ch. J., in *Wallace* v. *United States*, 162 U. S. 466, 477; *People* v. *Flack*, 125 N. Y. 324, 335.) This rule undoubtedly applies in a kidnapping case (Penal Law, § 1250, subd. 1), wherein specific statutory intent is an essential ingredient. As illustrating this rule and declaring the competency of evidence of the belief of the defendants and of their good faith, read *Hadden* v. *People* (25 N. Y. 373, 378, 379), a kidnapping case under a predecessor statute of Penal Law, section 1250, subdivision 1, and similar in terms to it. The defendants' good faith was material. (*Hadden* v. *People*, *supra*, pp. 378, 379.) Here the trial judge, in effect, excluded it erroneously. He said:

" I exclude it — the condition of his mind has nothing to do with it." This rule is the same in a criminal case as in a civil one. (Code Crim. Proc. § 392.) In a civil case involving tortious conduct, such questions asked a defendant as were here excluded, bearing upon the defendant's intent, are invariably recognized as competent. In *Brown* v. *Champlin* (66 N. Y. 214, at p. 221) Chief Judge CHURCH said: " That rule applies when the intent with which an act is done is the material point in issue, as the assignment of property with intent to defraud creditors, assault with intent to kill, and the like."

(c) The charge was unfair and a virtual direction by the trial judge to the jury to find the defendants guilty. A reading of the entire charge will demonstrate this. The trial judge in effect took from the jury the question of specific intent and in effect also decided that phase adversely to the defendants as a matter of law. The following charge was requested: " I respectfully ask your Honor to charge that if the defendants, or either of them, acted in the honest belief that his act in seizing and confining Wendel was done with authority of law, even if they were mistaken in such belief, that they cannot be convicted of seizing, confining or kidnapping Wendel, with intent, to cause him without authority of law to be confined or imprisoned within the State, and the jury must acquit such defendants or defendant." The court refused, stating: " I not only decline to charge that, but I repeat that the question of good faith is no defense." The defendants excepted. This ruling presents reversible error. The law is stated correctly in the request. (*People* v. *Camp*, 66 Hun, 531; affd., 139 N. Y. 87; *Dehn* v. *Mandeville, supra; Hadden* v. *People, supra.*) It is true that the court gave a proper charge based on the Penal Law definition of the crime of kidnapping. The court did not, however, withdraw the previous refusal to charge. The error in that refusal was not eliminated.

(d) The refusal to charge, as requested by the defendants, that they might be found guilty of the crime of assault in the second degree, was error. It is true that the second count in the indictment, for assault in the second degree, was struck therefrom on a previous trial. This circumstance did not take out of the case the possibility of conviction of that crime under the first count for kidnapping. There are no degrees of the crime of kidnapping. (Penal Law, § 1250, subd. 1.) Therefore, section 444 of the Code of Criminal Procedure is without application. Hence section 445 of the Code of Criminal Procedure applies if assault is included in the crime of kidnapping. It provides: " In all other cases, the defendant may be found guilty of any crime, the commission of

which is necessarily included in that with which he is charged in the indictment."

Undoubtedly, if the defendants seized complainant as charged, they committed an assault on him. That assault was necessarily included in the charged crime of kidnapping. No doubt exists that this crime of kidnapping necessarily includes assault. Judge Hubbs, in *People* v. *Hope* (*supra*, at p. 150), wrote: " The crime both under the English common law and the statute embraces all the elements of assault and false imprisonment. (2 Bishop on Criminal Law [9th ed.], § 750.) "

(e) Other prejudicial errors appear in the record. The trial judge, on Wendel's cross-examination, excluded questions tending to show that he was a fugitive from the justice of New Jersey and was hiding because bail on an indictment against him in New Jersey has been forfeited. The circumstance that a man is a fugitive has a bearing on his credibility. It has relation to moral turpitude. The evidence was improperly excluded. (70 C. J. 887.) The trial judge also erred in admitting, over the defendants' objection and exception, the opinion of the Supreme Court of the State of New Jersey, delivered on Wendel's application for reinstatement to the bar. This was utterly irrelevant and was undoubtedly prejudicial to the defendants. The opinion should have been excluded. ( *Vide People* v. *Cummins,* 209 N. Y. 283.)

In this case there should be a reversal in the interests of justice. We must have fair trials no matter who is being tried or what he is charged with doing in a criminal way. A judgment of conviction must be reversed if the trial is not a fair one, no matter how strong the evidence is against the accused. ( *People* v. *Wolf,* 183 N. Y. 464, 472.) The requirement of a fair trial is a fundamental one in any criminal prosecution. ( *People* v. *Becker,* 210 N. Y. 274, 311.) The principle just stated is trite. I do not think that we should ever lose sight of it. I do not think that we should affirm these judgments of conviction with what the late Judge Denis O'Brien referred to as " the strong hand of power." (Dissenting opinion in *People* v. *Mills,* 178 N. Y. 274, 304.)

Judgments of the County Court of Kings county, convicting appellants of the crime of kidnapping, affirmed.