Cheshire,
No. 5156.

STATE *v.* CHARLES WHITE.

Argued October 1, 1963.
Decided December 3, 1963.

*William Maynard,* Attorney General and *William J. O'Neil,* Assistant Attorney General (*Mr. O'Neil* orally), for the State.

*William D. Tribble* and *David J. KillKelley* (*Mr. Tribble* and *Mr. KillKelley* orally), for the defendant.

*Charles White* (by brief) pro se.

BLANDIN, J.   The State charges in substance that the defendant Charles White and another man named Moffitt offered to take the complainant, Mrs. Janet Allen in the defendant's car, from the main street in Hinsdale to her home nearby; that instead of so doing, the defendant drove her away in his car despite her protests, beat her, took her off on a lonely discontinued dirt road outside the main part of the town and there robbed her, beat her again, and went away leaving her for dead beside the road.

A preliminary issue is whether the Court erred in excusing a juror for cause.   It appears that the juror in question at one time had employed one of the defendant's attorneys, Mr. Tribble, to draw and file a deed for him.   In addition, he was a steady client of an associate of Mr. Tribble not engaged in the trial. Upon the State's challenge for cause, the Court excused this juror.

The law here is that the question of whether a juror is impartial is one of fact to be determined by the Trial Court.   *State* v. *Sawtelle*, 66 N. H. 488, 508, 538.   See *McLaughlin* v. *Union-Leader*, 99 N. H. 492, 499.   Although the *Sawtelle* decision has been questioned upon other grounds (4 N. H. B. J. 19;   5 N. H. B. J. 204, 212), the principle applicable in this case is firmly established.   4 N. H. B. J. 20.   It was also incumbent upon the Presiding Justice to see that a jury as nearly impartial "as the lot of humanity will admit" was selected. *State* v. *Prevost*, 105 N. H. 90.   On the record before us, we see no reason to disturb the Court's exercise of discretion in excusing the juror in question, and the defendant's exception is overruled.

A further question is raised by the defendant as to the admissibility of the sheriff's testimony that he observed what appeared to be blood stains on the defendant's shirt and also on parts of his automobile.   The matter of the admissibility of opinion evidence has received such exhaustive consideration in numerous cases here that we see no need for elaborate discussion.   Under the liberal rule which has long prevailed, the admissibility of this evidence does not depend upon the nature of the issue upon which the evidence bears, but upon whether or not it will probably aid the jury in its search for truth.   *Dowling* v. *Shattuck*, 91 N. H. 234, 236.

In the present case, the sheriff, a man of many years of service in his office, testified that he had had occasions to observe

blood stains in his work and believed that he could recognize them. In this situation, the Court's finding that the witness's experience was such that he possessed more knowledge on the subject than ordinary men and that his opinion would therefore probably aid the jury, appears unassailable. *Lynch* v. *Bissell*, 99 N. H. 473, 475. See also, *Commonwealth* v. *Sheppard*, 313 Mass. 590; 23 C. J. S., Criminal Law, *s*. 876 c. We believe that our rule is more conducive to a discovery of the truth than more restrictive procedures. While aware of such contrary authority as *Gantling* v. *State*, 40 Fla. 237, relied upon by the defendant, we do not choose to follow it. The defendant takes nothing by this exception.

Certain photographs, taken two days after the date of the alleged offense and showing the nature and extent of the injuries which the victim received, were admitted over objection by the defendant. There was testimony from a witness present at the taking that they were a fair representation of Mrs. Allen as she then appeared. These pictures were relevant as bearing on the nature and the degree of the crime and the defendant's purpose and mental state, as well as an aid in making clear to the jury oral descriptions of the injuries. *State* v. *Hause*, 82 N. H. 133, 135. Since they were relevant, their importance was to be weighed by the Presiding Justice as against the likelihood of any prejudicial effect which they might have in determining whether they should have been admitted. *State* v. *Hause, supra*, 136. The Court found that the photographs were sufficiently identified (*State* v. *Mannion*, 82 N. H. 518, 520) that they were relevant and not unduly prejudicial. We see no occasion to overturn these conclusions, and the defendant's exceptions to the admissibility of the pictures are overruled. *State* v. *Lavallee*, 104 N. H. 443.

It is urged that it was error to admit evidence of the substance of the defendant's alleged oral confession made as he was being transferred from Vermont to New Hampshire to face trial, some two months after the commission of the crime of which he is accused and about one and a half years before the trial. A preliminary hearing before the Court was held without the jury, after which, upon a finding that the confession was voluntary, the testimony to which the defendant objected was introduced. An examination of the record discloses evidence that prior to the confession the defendant, who was familiar with criminal procedure, had been warned of his rights and

that thereafter, of his own free will, without threats, fears, promises or inducements of any sort, he confessed that he robbed and beat Mrs. Allen. While refusing to reaffirm the confession on the stand, the defendant admitted that on the trip during which it is claimed he made the statements, everything he did say was purely voluntary.

In this situation, the preliminary finding of the Court that the confession was voluntary is clearly sustainable. *State* v. *George*, 93 N. H. 408, 415-416. There is no requirement in this state, as suggested by the defendant, that to be admissible an alleged oral confession must be repeated verbatim or that the defendant verify it as correct. We see no sufficient reason to establish such a procedure. On the record before us, no rights of the defendant were violated by the admission of this testimony, and he takes nothing by his exception. *State* v. *Hamson*, 104 N. H. 526.

The defendant further urges that the evidence here was insufficient to sustain a conviction for aggravated assault. Our statute governing this matter (RSA 585:22) merely states that if the assault "is of an aggravated nature," the offender shall be fined not more than $500, or imprisoned not more than three years, or both.

The record is barren of testimony that the victim had suffered any noticeable injuries immediately prior to the assault upon her. In regard to this assault, she testified that the defendant held her while his companion Moffitt beat her violently in the face, that the defendant himself struck her in the chest, that he also "socked me in the eyes [with his] fists," that he kicked her after she was thrown to the ground by Moffitt and her clothes torn off, and that the defendant then said, "We might as well leave her now she is dead."

The physician who treated her stated in part as follows: "She was very badly battered up about the face. There was a compound fracture of the nose, which means that the nose not only was fractured, but the skin was so torn across that you could actually look in to see the fractured fragments of the nose in the upper portion . . . There was blackening of her left eye . . . I think I would say she was semi-conscious . . . She was, of course, breathing hard and blowing blood with each breath. She was bleeding quite severely from the nose and mouth. . . . " The doctor also testified that she was in a state of shock and that it was several days before she got over "this concussion

she had from the blows to her face." It seems unnecessary to further detail the evidence. We think we need not labor the point that the jury could find that the attack by the defendant upon Mrs. Allen was perpetrated with such extraordinary violence and caused such serious bodily harm that it was an assault of an aggravated nature within the meaning of RSA 585:22. *State* v. *Lavallee*, 104 N. H. 443.

The defendant's argument in support of his claim that the evidence was insufficient to sustain a conviction of petty larceny is based mainly upon his own denial that he committed any robbery and ignores other evidence. Mrs. Allen testified unequivocally that the defendant "took my wallet" with about nine dollars in it and refused even to give her back some pictures that were in it, because he told her "there would be fingerprints on them." She said that after this the defendant and Moffitt talked about buying beer with her money and that she has not seen her wallet or her money since. In addition, there was testimony the defendant told the sheriff and the county solicitor that "he was sorry . . . he robbed her." This was clearly sufficient to sustain a conviction for petty larceny under RSA 582:5 (supp), and the defendant's exception cannot prevail. *Hatfield* v. *Guay*, 87 F. 2d 358, 363 (1st Cir. 1937). See *State* v. *Canatella*, 96 N. H. 202.

The exception to the Trial Court's permitting the State to inquire into a matter on cross-examination of one of the defendant's witnesses, upon which the defendant claims the witness had not been interrogated on redirect examination, does not require extended consideration. Superior Court Rule 56 specifically permits such examination by leave of court for good cause shown. Here the witness had testified on the stand in sharp contradiction to a statement he had allegedly given to the sheriff shortly after the crime was committed. The entire matter was within the discretion of the Trial Judge, and the recross-examination for the purpose of testing the witness's credibility was proper. *State* v. *Sturtevant,* 96 N. H. 99, 105; *Roy* v. *State*, 104 N. H. 513, 515.

The defendant finally takes the position that the record was insufficient to sustain a conviction for kidnapping. Our statute defining the offense reads as follows:

"If any person shall wilfully and without lawful authority seize, abduct, detain, inveigle, or kidnap any other person with intent to cause him to be secretly confined or imprisoned against

his will, or to be sent out of the state, or in any way to be held for service against his will, he shall be imprisoned not more than twenty-five years." RSA 585:19. The defendant correctly interprets this statute to mean that to constitute the offense of kidnapping there must be "the intent to cause the complaining individual to be secretly confined or imprisoned against her will." He argues that this indicates that there must be a "surreptitious restraint . . . in such a manner as to deprive the subject of the 'friendly assistance of the law to relieve himself from captivity.'" Here he claims that there was no evidence that he intended to secretly confine the complaining witness within the meaning of RSA 585:19 and no evidence to indicate that he actually "held, seized, detained or imprisoned," Mrs. Allen.

Although section 19 has never been precisely construed here, we think that its meaning is reasonably plain. We agree with the defendant that there must be an intent to secretly detain or confine the complainant against her will in such a manner as to deprive her of help. As will hereinafter be noted, other jurisdictions have so construed similar provisions.

However, we believe that the record rebuts the defendant's contentions as to the lack of evidence to support a conviction for kidnapping in this case. The jury could find from the testimony the following facts: When the defendant did not turn his car at the blinker light to go in the direction of the complainant's home as she expected him to do, but continued driving her away from her home, she told him he was going the wrong way. He paid no attention to her, but drove on. She became terrified and began to scream. Both the defendant and his companion Moffitt struck her and tried to silence her. She endeavored in vain to roll down the window to call for help. As they passed her stepmother's house, she screamed louder. The defendant told her to be still or he would hit her. She refused, whereupon the defendant pulled up beside the road some distance beyond her stepmother's house and struck her several times. As she described it: "I was trying to get away from them both," but she could not do so.

The defendant then continued on for some distance and finally turned off the main highway onto a lonely discontinued dirt road and drove down it "quite a ways." When she asked him where they were going, he replied: "just only for a little ride." The defendant finally stopped the car at the place where there were trees obstructing the view of the main road and where no

help appears to have been available to Mrs. Allen. She was kept in the car for some minutes, during which the defendant took her purse, and he and Moffitt discussed whether the latter would rape her. Finally she was dragged from the car by Moffitt. Next, the defendant held her while Moffitt beat her and then the defendant beat her in the face himself, and when she was thrown to the ground he kicked her. After remarking "We might as well leave now she is dead," he got into his car and drove away.

From these circumstances, the jury could conclude that from the time the defendant ignored Mrs. Allen's protest when he began to carry her away from her home and until he left her for dead upon the ground, he was detaining her forcibly and against her will. The mere fact that the automobile proceeded for some distance upon the main highway before turning onto the secluded dirt road by no means proves, as the defendant contends, that her confinement was not secret. As has well been stated in a case involving similar conditions, "This assumption is entirely unwarranted. A person forcibly confined in an automobile constantly moving from place to place may be more secretly and effectively confined from the kidnapper's standpoint than one kept in a building or other place of incarceration. Common experience has shown that a victim and his kidnapper so situated can be most difficult to locate . . . The conclusion . . . that there was no secret confinement is without any foundation." *People* v. *Bishop*, 1 Ill. 2d 60, 64.

In the circumstances before us, neither the length of time during which she was confined nor the distance traveled are decisive. It is sufficient that the jury's conclusion that she was forcibly detained against her will for an appreciable period is supported by the record. *People* v. *Hope*, 257 N. Y. 147; *State* v. *Dunlap*, 61 N. J. Super. 582; see *State* v. *Lacoshus*, 96 N. H. 76, 78.

In addition to this, the defendant took Mrs. Allen onto a secluded road and by threats and beatings endeavored to so silence her that no one would know where she was. By these means he deprived her not only of the "friendly assistance of the law to redeem [herself] from captivity" (*State* v. *Randall*, 137 Mont. 534, 539), but indeed of any help whatsoever. See also, *State* v. *Frodsham*, 139 Mont. 222. The matter of his intent was a proper inference from the facts. *State* v. *Nelson*,

103 N. H. 478, 486;  see *State* v. *Iacavone*, 85 N. H. 207, 209.

In short, the jury's finding that the defendant intended to and did "secretly confine" the complainant "against [her] will" within the meaning of RSA 585:19, is amply supported. *People* v. *Hope*, 257 N. Y. 147;  *State* v. *Nelson*, 103 N. H. 478.

Such authorities as *People* v. *Camp*, 139 N. Y. 87, relied upon by the defendant, are clearly distinguishable on their facts from the case before us and are not authority to support his position here. See *People* v. *Hope, supra.*

At the request of the defendant he was furnished with the record, briefs of all counsel, and allowed to file a brief on his own behalf in addition to that of his counsel.

The trial, wherein the defendant was vigorously and capably represented by experienced counsel, was free from any error. The evidence was sufficient to warrant the verdicts as rendered, and the order is

*Exceptions overruled.*

All concurred.