Charles **WHITE**, Petitioner,

v.

Parker L. **HANCOCK**, Warden, New Hampshire State Prison et al., Respondents.

Civ. No. 2567.

United States District Court
D. New Hampshire.

Oct. 28, 1966.

J. Gilbert Upton, Concord, N. H., Richard N. Pearson, Boston, Mass., for petitioner.

Williom J. O'Neil, Asst. Atty. Gen., Concord, N. H., for respondents.

## OPINION AND ORDER OF THE COURT

GIGNOUX, District Judge, by designation.

The petitioner, Charles White, was convicted by a jury at the January 1963 Term of the Cheshire County, New Hampshire, Superior Court of the crimes of kidnapping, aggravated assault and larceny. He was sentenced to 7 to 12 years imprisonment in the New Hampshire State Prison, and is presently in the custody of the respondent warden serving that sentence. On appeal, the New Hampshire Supreme Court affirmed his conviction, State v. White, 105 N.H. 159, 196 A.2d 33 (1963), cert. denied, 379 U.S. 854, 85 S.Ct. 103, 13 L.Ed.2d 57 (1964). Thereafter, petitioner filed with the New Hampshire Supreme Court a petition for a writ of habeas corpus, which was dismissed by that court on February 26, 1965. White v. Hancock, 106 N.H. 172, 207 A.2d 435 (1965). He then filed in this Court the present petition for a writ of habeas corpus, alleging that his conviction was obtained in violation of his federal constitutional rights. On May 11, 1965, this Court, on the basis of the state court record, and without taking evidence, dismissed the petition. On appeal, the Court of Appeals for the First Circuit reversed and remanded the action for an evidentiary hearing. White v. Hancock, 355 F.2d 262 (1st Cir. 1966).

 Pursuant to the mandate of the Court of Appeals, this Court on April 4, 1966, held a full evidentiary hearing, at which petitioner was represented by court-appointed counsel. By agreement of the parties, the evidence presented at the hearing was limited to the question of whether certain post-indictment incriminatory statements alleged to have been made by petitioner to the then

county attorney and sheriff were improperly received in evidence at his trial because petitioner was not represented by counsel and had not knowingly and understandingly waived his right to counsel, in violation of the principles of Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964) and McLeod v. State of Ohio, 381 U.S. 356, 85 S.Ct. 1556, 14 L.Ed.2d 682 (1965), reversing without opinion, 1 Ohio St. 2d 60, 203 N.E.2d 349 (1964).[1] It is undisputed that petitioner has presented the federal constitutional question thus raised to the highest court of the State of New Hampshire, and that, having obtained an adverse ruling from that court, he has exhausted his available state remedies as required by 28 U.S.C. § 2254, and is entitled to an independent consideration by this Court of the deprivation of federal constitutional right which he asserts. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

The relevant facts, as disclosed at the hearing, are the following. On August 21, 1961, Mrs. Janet Allen was kidnapped, beaten and robbed in the town of Hinsdale, New Hampshire. White was arrested that same evening near Brattleboro, Vermont and held at the Brattleboro police station. He was interviewed that night at the station by one Walker, a New Hampshire sheriff. White declined to talk. He also refused to waive extradition. At no time during the evening was White informed of his rights to silence and to counsel. At his arraignment on a fugitive warrant the next morning, the Brattleboro Municipal Court appointed a lawyer to represent White, and the extradition hearing was continued for 30 days. Since White was unable to raise bail, he was remanded to the Newfane, Vermont, jail to await the hearing.

On September 12, 1961 White was indicted by the Cheshire County grand jury for kidnapping, aggravated assault and robbery. Shortly thereafter, during the latter part of September, White was brought back to court for the extradition hearing. At the request of the State of New Hampshire, the court continued the case for another 30 days, and appointed one Ernest Gibson, a Vermont attorney, to represent White in the extradition proceedings. After the hearing, Gibson conferred with White, informed him that he was representing him only for the extradition proceedings, and advised him not to discuss the case with anyone and to refer any persons with questions to him. A few days later, on October 6 or 7, Sheriff Walker again attempted to interview White at the Newfane jail. White told Walker that Gibson was his lawyer and that he should talk to him. On October 26, after a hearing before the Superior Court at Newfane, at which White was represented by Gibson, the court entered an order of extradition, and White was delivered into the custody of Sheriff Walker and the Cheshire County Attorney, Arthur Olson, Jr., to be transported to Keene, New Hampshire. At this point, neither the Vermont nor the New Hampshire authorities had informed White of his rights to silence and to court-appointed counsel in connection with the New Hampshire proceedings.

The 30-mile trip from Newfane to Keene in Walker's car took a little over half an hour. Walker drove, and Olson sat in the front seat with him. White, handcuffed and wearing a restraining belt, sat alone in the back seat. As is usual in cases involving incriminatory statements made during unsupervised police custody, see Davis v. State of North Carolina, 384 U.S. 737, 741, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966), the testi-

1. At the hearing petitioner reserved a second issue, raised by his contention that the prosecution at his trial knowingly used an incompetent witness. Although the Court of Appeals indicated that petitioner might be entitled to an evidentiary hearing on this claim, White v. Hancock, supra, 355 F.2d at 264, the parties agreed that consideration of this matter be deferred until after the Court's ruling upon the present issue.

mony is conflicting as to what was said during this ride. According to Walker and Olson, they were discussing other matters in the front seat when White spontaneously, without questioning or prompting, admitted his involvement in the Hinsdale incident, stated he wanted to get it cleared up as quickly as possible, and made various other statements of an incriminating nature.[2] According to White, he made no incriminating statements, but Walker and Olson told him that if he did not plead guilty the next day at Keene, he would be held at a bail he could not make until the next term of court some four months later, that no jury would ever believe he was innocent, and that the best thing he could do would be to plead guilty. White further testified that he made a deal to plead guilty for a favorable recommendation of an eight to ten year sentence.[3] Quite apart from the disputed testimony, however, it is evident from the undisputed facts that during the ride to Keene the officers discussed with White the sentence he might receive in the event he pleaded guilty and the alternatives if he did not, and that during the course of this discussion White made the incriminatory statements to which Walker and Olson testified, over White's objection, at the trial.

It further appears without dispute that at no time during the ride to Keene did either White or Olson advise White of his rights to silence and to court-appointed counsel.[4] On the other hand, White made no request for counsel, and he concedes that he knew at the time he did not have to say anything or discuss the case with Walker and Olson, and that it was his voluntary choice to talk with them. White further testified that he was not physically threatened or abused; that Walker and Olson were not "firing" questions at him; and that the conversation proceeded in a "friendly manner."

Other evidence received at the hearing establishes that petitioner, who was 58 years old in 1961, had completed the seventh or eighth grade in school. Since age 15, he had spent most of his life in prison and had had considerable experience in criminal courts and procedures. While in connection with several of his previous encounters with the law he had been represented by court-appointed counsel, apparently such appointments had been made only in court after he had agreed to plead guilty.[5] In

2. As Olson recalled the trip, after they had been riding a little while, he and Walker were "talking about other things, and Mr. White was talking about, I believe it was, attempted breaks or something up at the jail," when they "got into talking about the incident which happened in August," and White said, "that he was involved in it, that he was sorry that he was involved in it, that if he hadn't been drinking it probably wouldn't have happened. And he wanted to know if he could get this thing cleared up as quickly as possible."

3. Specifically, White testified that Olson told him that he was "in a lot of trouble"; that he was "going to get time out of this"; that "the best thing you can do is plead guilty"; and that "no jury's ever going to believe you." White further testified that he was "scared," "run down," and "sick," and that he then asked "How much time would I get out of this thing if I did plead guilty?", to which Olson replied, "I'll recommend

eight to ten years." White testified that he said "No, I don't think so," but that when they arrived at the jail in Keene, he said to Walker, "You can tell Olson I'll go along. Tell him O.K., I'll plead guilty. I'll take the eight to ten."

4. At some point in the conversation White was told he must have counsel at the arraignment in Keene the following day, but Olson admitted this was after White had said he might plead guilty and related only to his appearance before the court in the event he did plead guilty.

5. White testified that at his first court appearance as an adult in Minnesota in 1923, he was not represented by an attorney. At his next appearance in New York in 1931, a "Legal Aid" attorney was assigned to represent him after he had agreed to plead guilty. At his next appearance in New Jersey in 1940, he was not represented by an attorney. At two court appearances in Massachusetts in 1947, he was not represented by an at-

White's own words, he "never dreamed" that he could have an attorney without paying for one unless he had made a "deal." There is no question of White's financial inability to retain counsel in 1961.

In its order of remand, the Court of Appeals thus stated the principles which must govern this Court in its consideration of the present case:

Whatever the rule may be as to pre-indictment cases, (citations omitted),[6] we regard the law as now settled that after indictment the obligation is upon the police to inform a defendant of his rights to silence and to court-appointed counsel. These rights may, of course, be waived. (citation omitted) For this purpose the state may show that a defendant was not prejudiced by lack of contemporary instruction by the police. However, the burden must be on the state to establish that in fact the defendant already had full knowledge of his rights; that he understood that an attempt to exercise them would not be thwarted or penalized; and that with such knowledge he acted entirely voluntarily. Waiver of constitutional rights when a defendant has not been given contemporary information of what they are is not lightly to be inferred, and we believe in this circumstance the state's claim of knowledge on the defendant's part should be subjected to the "clear and convincing" test reserved for special policy situations. Cf. McCormick, Evidence (1954) Ch. 36, § 320.

White v. Hancock, supra, 355 F.2d at 263.

■ Applying this test, this Court cannot say that the state has sustained its burden of establishing by clear and convincing proof that during the ride from Newfane to Keene, White had full knowledge of his rights and that with such knowledge he acted entirely voluntarily in waiving them. While, admittedly, White knew at the time that he did not have to talk with Walker and Olson, the record is devoid of affirmative evidence that White understood he had the right to the advice of court-appointed counsel before doing so. Neither Walker nor Olson specifically informed White of his right in this respect, and the state's effort to predicate knowledge upon White's prior criminal record falls far short of meeting the "clear and convincing" test to which its claim of such knowledge is subject.[7] The principle has been long recognized that a defendant is entitled to "every reasonable presumption against waiver" of a fundamental constitutional right, Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and as the Supreme

---

torney. At a court appearance in Massachusetts in 1948, his wife had obtained an attorney for him. At several further court appearances in Massachusetts between 1949 and 1953, he was not represented by an attorney. At a court appearance in 1954, he received court-appointed counsel after he had appeared in court and agreed to plead guilty. At court appearances in Vermont and Massachusetts in 1957 and 1960, he was not represented by an attorney.

6. The subsequent decision of the Supreme Court in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) has, of course, now settled the rule as to preindictment cases. Although it is clear that Miranda is not retrospective, Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), it seems equally clear that this being a postindictment case, petitioner is entitled to the procedural safeguards set forth by the Supreme Court in Massiah v. United States, supra, and retrospectively applied by that court in McLeod v. State of Ohio, supra, and Lyles v. Beto, 379 U.S. 648, 85 S.Ct. 613, 13 L.Ed.2d 552 (1965), remanding 329 F.2d 332 (5th Cir. 1964).

7. Despite White's previous experience in the criminal courts, his claim that he did not believe he was entitled to appointed counsel prior to his formal appearance in the New Hampshire court is a highly credible one. As indicated in n. 5, supra, it appears that during White's previous encounters with the law counsel had been appointed to represent him only after he had appeared in court, and in all probability after he had, in his words, "made a deal" to plead guilty. It further appears that until 1961 White had never attempted to defend a criminal charge.

Court stated in Carnley v. Cochran, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962), "Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.[8]

For the reasons stated, this Court holds that the incriminatory statements alleged to have been made by petitioner to Walker and Olson during the ride from Newfane to Keene were improperly received in evidence at his trial because petitioner was not represented by counsel and had not knowingly and understandingly waived his right to counsel, in violation of the principles of Massiah v. United States, supra, and McLeod v. State of Ohio, supra. Accordingly, the judgment of conviction and sentence imposed upon petitioner by the Cheshire County Superior Court is vacated, and the matter is remanded to that court to afford the State of New Hampshire an opportunity to grant petitioner a new trial. In the event of the failure of the state to grant petitioner such relief within 60 days from the date hereof, the writ will be sustained and petitioner ordered discharged from custody.

The Clerk will enter an appropriate order in accordance with the foregoing, which order shall also provide that this Court shall retain jurisdiction of the present petition for the entry of such further orders as may be necessary or appropriate.[9]

---

8. In Carnley, of course, the Supreme Court was speaking of the right of a defendant to the assistance of counsel at trial. But if there can be any doubt of the applicability of the principles there announced to proof of waiver of a constitutional right to counsel during the pre-trial stages of a criminal proceeding, it would appear to have been dispelled by the court's significant comment concerning proof of waiver in Miranda, supra n. 6, 384 U.S. at 468–469, 86 S.Ct. at 1625:

The Fifth Amendment privilege is so fundamental to our system of constitutional rule and the expedient of giving an adequate warning as to the availability of the privilege so simple, we will not pause to inquire in individual cases whether the defendant was aware of his rights without a warning being given. Assessments of the knowledge the defendant possessed, based on information as to his age, education, intelligence, or prior contact with authorities, can never be more than speculation; a warning is a clearcut fact. More important, whatever the background of the person interrogated, a warning at the time of the interrogation is indispensable to overcome its pressures and to insure that the individual knows he is free to exercise the privilege at that point in time.

9. Petitioner has been ably represented throughout these proceedings by his court-appointed counsel, J. Gilbert Upton, Esq., of Concord, New Hampshire, and Richard N. Pearson, Esq., of Boston, Massachusetts.