JOHN BIGAR, Claimant and Respondent, *v.* TRI-STATE SAND AND GRAVEL, INC., Employer and Appellant, *v.* CONTINENTAL INSURANCE COMPANY, Defendant and Appellant.

No. 11974.
Submitted May 11, 1971.
Decided July 7, 1971.
Rehearing Denied July 20, 1971.
486 P.2d 881.

Lyman H. Bennett, Jr., argued, Bozeman, for appellants.

Morrow, Nash & Sedivy, Bozeman, James H. Morrow, Jr., argued, Bozeman, for respondent.

MR. JUSTICE DALY delivered the Opinion of the Court.

On November 20, 1969, the Industrial Accident Board held a hearing at Bozeman, Montana, which resulted in its order of June 15, 1970, awarding to claimant minimal permanent partial disability. Claimant appealed to the District Court of Gallatin County. The district court reversed some of the findings of the Board and ordered new findings and conclusions in part to be adopted by the Board. From this judgment the employer and his insurance carrier appeal.

The claimant John Bigar suffered an accidental injury arising out of and in the course of his employment by Tri-State Sand & Gravel, Inc. at West Yellowstone, Montana, in Gallatin County, on May 30, 1968. At that time his employer Tri-State Sand & Gravel, Inc. was enrolled under Plan II of the Montana Workmen's Compensation Act. The carrier was Continental Insurance Company. Hereinafter the employer and carrier will be referred to collectively as the carrier.

At the time of the accident John Bigar was 46, unmarried, and had no dependent minor children. He was a laborer earning $2.75 to $3.00 per hour, averaging 10 hours per day, 7 days per week. His actual wages averaged $192.50 per week.

For years prior to, and on May 30, 1968, John Bigar had been employed as a common laborer and as a general farmhand. At the time of the accident he was employed as a common laborer, laying sewer pipe in a trench for Tri-State Sand & Gravel, Inc. of West Yellowstone, Montana.

The cause of the accident was an excavation cave-in. Large solid chunks of dirt and earth backfill, weighing up to 25 pounds apiece, fell on claimant, hitting him in the lower back and filling the excavation to the extent that he was buried up to his waist, before he could free himself.

At the hearing before the Industrial Accident Board, testi-

mony for the claimant was taken from the claimant, Dr. Albert De Heetderks, the attending physician at the time of the accident, and Dr. Charles A. Kirkpatrick, a radiology expert.

Following the accident claimant was hospitalized for approximately 10 days with fractures of the left transverse spineous processes of L-1, L-2, and L-3, directly attributable to the excavation cave-in. The nature of the injury was a combination of damage to muscle and soft tissue in the back and fractures to the skeletal structure of the back.

Claimant received temporary total disability from the insurance carrier from the time of the accident, May 30, 1968, to July 8, 1968. At this time Dr. Heetderks had claimant fitted to a back brace. Thereafter, claimant testified, he tried to work at various jobs but back and leg problems forced him to try and seek lighter work. He worked for a short time as a dishwasher in Las Vegas, Nevada, but had the same difficulty and suffered considerable weight loss, in addition to being without sufficient funds to get medical aid. In May 1969, a Dr. Beeman in Las Vegas referred claimant to the Veterans Administration Hospital at Los Angeles, California, where he remained in the domiciliary unit until the Industrial Accident Board hearing, November 20, 1969.

At the hearing it was established that claimant was not able to enter the labor market and his ability to earn a living was almost nil. It was established by Dr. Heetderks that the fractures in the lumbar had healed but there was chronic soft tissue damage in the area; that there was a pre-existing alcoholic condition from which claimant had withdrawn and which was detected on examination for an unrelated problem in March, prior to the accident in May. In May, the doctor felt the nervous condition associated with this problem was improved, however, the tremulous condition had increased on examination November 17, 1969, sixteen months later just prior to the hearing. The doctor felt that this condition contributed more to his total disability than the tissue injury and this condition was probably aggravated by the accident, but testified he was not familiar

enough with the history of the claimant to go further into the matter.

On May 11, 1970, the Industrial Accident Board entered its findings of fact and conclusions of law. Insofar as they pertain to this appeal, they held:

"That by reason of the injury Claimant has suffered a minimal permanent partial impairment, a fair and reasonable award being 25 weeks at the lawful rate of $37.00 per week for a total of $925.00, which should be paid forthwith in a lump sum.

"That the Claimant is entitled to hospital and medical benefits for the period of the award in accordance with the Act.

"That the Claimant accept this award as a full and final award of all compensation due under the Act."

Petition for rehearing was filed by claimant on or about June 17, 1970; the Board denied rehearing on June 22, 1970. Claimant then appealed to the District Court of the Eighteenth Judicial District, Gallatin County.

On July 6, 1970, claimant's attorney was paid $925 (25 weeks at $37 per week) for claimant, being a minimal Board award as provided by section 92-825, R.C.M.1947, and the carrier's attorney obtained a receipt from claimant's attorney which reads as follows:

"Received of Lyman H. Bennett; attorney for Continental Insurance Co., the sum of $925.00, the amount ordered paid by the Montana Industrial Accident Board in its Order herein dated the 11th day of May, 1970, subject to claimant's appellate rights."

On August 3, 1970, the carrier moved the district court of the eighteenth judicial district for an order dismissing the appeal upon the ground that the award of the Industrial Accident Board was fully paid to the claimant on July 6, 1970; that accordingly, the judgment and decision of the Board was fully paid and satisfied and questions presented by the appeal to the district court were moot.

The court, prior to this motion, had set the trial date on the appeal for Tuesday, August 25, 1970 at 10 a.m. The court's

order dismissing the carrier's motion to dismiss was entered August 24, 1970.

The carrier did not appear on August 25, 1970. The court permitted claimant to introduce additional evidence and proceeded with the hearing, noting for the record that the carrier had been served with notice of the hearing.

The court heard testimony from Dr. Heetderks, Dr. Bayliss, and claimant John Bigar.

Dr. Albert De Heetderks clarified his Board testimony as follows:

"Q. In connection with your findings of chronic scarring and chronic injury to the lower muscles, in your testimony in 1969 at the Board hearing, by that chronic scarring and chronic injury you had in mind a permanent type of scarring or injury on account of that accident, didn't you doctor? A. My allusion at that time was to the fact that a crushing injury sufficiently severe to fracture the underlying bones in the spine would in all probability result in some sort of tissue injury as well, and, of course, the soft tissues involved in this area are muscular and I believe that such an injury would be permanent."

Additionally, Dr. Heetderks testified:

"Q. * * * But, do you feel that for the approximately 18 months from May 30, 1968 to November 20, 1969, that this man was disabled and unable to handle work as a farm laborer or common laborer? Could he go out and do the usual farm work or common labor work at any time during the 18 months? A. Unfortunately I am unable to indicate categorically because I was not in contact with the patient enough to know all of the activities he engaged in or attempted to engage in, but historically he apparently accepted several laboring jobs and was unable to participate in them for any length of time due to pain in his low back."

Dr. Heetderks further testified that in his opinion the claimant's earning capacity was reduced "something on the order of

ten percent'' and further that claimant was suffering additional injury on account of the accident:

''Q. So, his alcoholic problem may have been aggravated, he may have suffered some traumatic neurosis on account of that accident and there is some physical impairment on account of that accident? Would that be correct? A. I would believe so.''

Dr. Bayliss examined the claimant in November 1969, March 1970, and in August 1970, just prior to the district court hearing. His opinion was that because of the accident claimant's earning capacity was reduced probably 50 percent, he testified:

''Q. What would be your opinion as to this man's disability from the time, from approximately July 10th, 1968, permanently and partially, what would be the percentage, in your opinion, of his disability in the area of earning capacity? A. It is my opinion from the type of work that he is fitted for or capable of doing, that his earning capacity has probably been reduced 50 percent, which involves heavy physical work that would be associated with ordinary ranch or farm work or laboring work.

''Q. From your history that you have given here and your knowledge and background of this man's activity and your diagnosis and medical and other information that you now have, do you feel that this man is now able to engage as a farm laborer or a common laborer in the ordinary construction area of work? Is he presently able to do it? A. Not the millrun of that type of work; not unless it was a specialized soft job, as you might call it.

''Q. Do you feel, in the future, that he will be able to go back to this type of activity? A. Involving heavy strenuous work, I doubt it.''

Concerning reasonable medical certainty, Dr. Bayliss testified:

''Q. * * * and from your examinations and history of Mr. Bigar and from your observations and study of his condition, with your background and knowledge and the activity of a common laborer, do you have an opinion with reasonable medical

certainty whether or not on account of that accident this man is suffering a permanent disability? A. I believe that he is."

Dr. Bayliss testified at length about the claimant's nervous and alcoholic problem and concluded in part as follows:

"* * * and the fact that he was buried up to his waist, it would be rather a frightening experience, to say the least, that he had been hit hard enough to break these bones. He could still be, through his personality, he could be suffering from what we call a traumatic neurosis which also would aggravate possibly his drinking habits and make him that much more incapacitated as far as getting out and doing hard physical labor."

On September 3, 1970, the court granted the carrier's motion to reopen the case; present evidence, and produce and cross-examine the witnesses of the claimant. At the hearing on September 21, 1970, the carrier failed to produce or examine witnesses. It produced the check for $925, heretofore described, as payment of the Board's award and rested.

On October 6, 1970, the district court rendered its judgment with changes in the findings of fact and conclusions of law. As they relate to this appeal, they are as follows:

"* * * that from July 8, 1968, to September 21, 1970 (114 weeks) the claimant is entitled to Industrial Accident benefits pursuant to Section 92-703 R.C.M.1947, as amended, at the rate of $37.00 per week, less 25 weeks of partial disability benefits paid to him by the Insurance Carrier.

"That on account of said accident and resulting disability the claimant is entitled to future benefits of 50% of the difference between $192.50 per week and the amount he is able to earn for a period of 500 weeks (less 114 weeks permanent partial disability to date hereof).

"That the claimant is entitled to have further medical and hospital expenses, arising on account of said accident, paid by the Insurance Carrier for the three year period from May 30, 1968, as provided by the Montana Workmen's Compensation Act.

"It is hereby ordered that the Montana Industrial Accident

Board adopt these new and substituted Findings of Fact and Conclusions of Law made by this Court, and that its Findings of Fact and Conclusions of Law and Orders in conflict herewith are hereby ordered set aside."

The carrier now appeals from the district court judgment. It presents two issues to be considered on appeal:

1. Was the appeal of the claimant from the Industrial Accident Board order rendered moot and subject to dismissal by payment of the $925 award?

2. Was there any reasonable basis to reverse the findings of the Industrial Accident Board as to the extent of the compensation to be paid?

In issue No. 1 the carrier has elected to transpose the Board's order into a district court judgment and has cited two cases in support of its position which are correct—"when the [district court] judgment is paid, it passes beyond review." (Bracketed material added). However, the situation is not the same as it pertains to the Industrial Accident Board orders which are controlled by statute.

Section 92-832, R.C.M.1947, directs that the order be carried out by the carrier unless it makes application for a stay, in the following language:

"92-832. *Application for rehearing or appeal shall not operate as stay.* An application for rehearing or the appeal hereinafter provided shall not excuse any employer, employee, or other person from complying with or obeying any order or requirement of the board, or operate in any manner to stay or postpone the enforcement of an order or requirement thereof, except as the board or the court may direct."

See: White v. Tremont Lumber Co., (La.App.1932), 142 So. 165; 100 C.J.S. Workmen's Compensation § 735, p. 1100.

Without continuing a recitation of authority, it is worthy of note that the receipt given for the award payment plainly stated "subject to claimant's appellate rights." We find Issue No. 1 to be without merit.

As stated by the carrier, Issue No. 2 concerns the reasonable

basis of the district court's findings. The district court permitted additional evidence to be presented, all of which stands uncontroverted. Where such evidence is presented to the district court, the trial of the matter shall be de novo. Section 92-834, R.C.M.1947.

In reviewing workmen's compensation claims which have been heard on appeal by the district court, this Court in Breen v. Ind. Acc. Board, 150 Mont. 463, 468, 436 P.2d 701, 704, stated:

"At the outset it must be noted that the scope of review by the Supreme Court upon this appeal is confined to a determination of whether there is substantial evidence to support the findings of the district court (McKinzie v. Sandon, 141 Mont. 540, 380 P.2d 580; Newman v. Kamp, 140 Mont. 487, 374 P.2d 100 * * *). Such findings and conclusions are clothed with the presumption of correctness (Section 93-1301-7, subds. 15 and 33, R.C.M.1947; Friedt v. Industrial Accident Board, 136 Mont. 141, 345 P.2d 377; Laukaitis v. Sisters of Charity, 135 Mont. 469, 342 P.2d 752 * * *), and will not be reversed on appeal unless the evidence preponderates against them (Morgan v. Industrial Accident Board, 133 Mont. 254, 321 P.2d 232 * * *), even though conflicts in the evidence exists * * *."

It is agreed that the evidence before the Board was not clear as it concerned the extent of the disability that could be attributed to the industrial accident. This was corrected in the district court and stands uncontroverted. It is sufficient credible evidence to sustain the district court's findings. Or put in the manner the carrier stated Issue No. 2, there was a reasonable basis for the court to reverse the findings of the Industrial Accident Board as to the extent of the compensation.

The judgment of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES HASWELL, CASTLES, and JOHN C. HARRISON, concur.