154 N.J. Super. 347 (1977)
381 A.2d 398
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOSEPH A. ZICARELLI, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 24, 1977.
Decided November 18, 1977.
*349 Before Judges ALLCORN, MORGAN and HORN.
Mr. Harvey Weissbard argued the cause for appellant (Messrs. Isles, Newman & Weissbard, attorneys).
Mr. Anthony J. Parrillo, Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General of New Jersey, attorney).
*350 The opinion of the court was delivered by MORGAN, J.A.D.
The present appeal constitutes yet another chapter in defendant Zicarelli's strenuous attempts in both federal and state courts to overturn his convictions of conspiracy and bribery in Hudson County founded upon Burlington County jury verdicts. The extended history of the appellate litigation concerning the several interrelated Sixth Amendment and due process claims raised by the fact that a Burlington County jury decided defendant's culpability with respect to offenses which occurred in Hudson County need not be recounted here because of the comprehensive account thereof contained in the most recent appellate effort to resolve them. See Zicarelli v. Gray, 543 F.2d 466 (3 Cir.1976) (en bane). We need only commence consideration of this matter with the issues left unresolved by Zicarelli v. Gray for defendant's failure to have exhausted his state remedies with respect thereto.
The Third Circuit Court of Appeals described two issues raised by Zicarelli in his efforts to obtain release from custody, both of which involved claimed Sixth Amendment violations. That court described his contentions made in that proceeding in the following terms:
* * * The first is that the trial before a jury drawn from Burlington County violated his right to be tried by a jury composed of residents of the county where the crime was committed; the second is that the procedures employed by the state in assembling the jury violated the cross-section concept of the sixth amendment.
A third issue was raised for the first time during oral argument of that appeal and this, in the words of the court, was "that the `district' from which the trial jury was chosen was not previously ascertained by law, as required by the sixth amendment." Id. at 470.
Satisfied that Zicarelli exhausted state remedies as to the first issue, the Third Circuit agreed to resolve it. That issue involved Zicarelli's claimed right to be tried by a jury drawn *351 from Hudson County, the county where the offenses occurred. His contention was rejected, the court holding that
* * * that Zicarelli's federal constitutional rights were not transgressed when the State of New Jersey tried him before a jury drawn from Burlington County on charges of criminal activity that occurred in Hudson County. The petit jury was drawn from both the state and the federal judicial district within which the crimes occurred, and the state-and-district guarantee of the Constitution promises no more. [Id. at 482]
Left for our resolution, on defendant's application therefor, and because the court perceived that the question had received no state consideration during the state appeal process, were the two remaining questions: (1) the so-called cross-section requirement and (2) the requirement that the county in which Zicarelli was tried be within a district previously ascertained by law within the meaning of the Sixth Amendment.
Following rendition of Zicarelli v. Gray, supra, defendant commenced post-conviction proceedings in this State raising the two unresolved issues. As a factual predicate for the requested post-conviction relief with respect to cross-section requirement, Zicarelli offered the following official data from the 1970 census:
(a) Hudson County is the smallest and, with nearly 14,000 people per square mile, the most densely populated county in the state. Burlington is the largest county in terms of square miles and, with some 274 people per square mile, one of the most sparsely populated.
(b) Burlington is one of our agricultural counties, with more acres devoted to farming than any other county. Hudson, of course, is largely industrial.
(c) 42.1% of the people in Hudson County are of foreign stock as compared with only 15.4% of the population in Burlington.
(d) In Hudson County some 46.3% of the people have a language other than English as their mother tongue; compared with slightly under 19% in Burlington County. For example, there are seven times as many Spanish speaking people in Hudson as in Burlington.
(e) In Hudson County around 36% of the people have graduated from High School compared with roughly 60% in Burlington County.
*352 Zicarelli's petition was rejected by the trial judge who concluded that, notwithstanding the census data supplied, the demographic differences between the population of Hudson and Burlington Counties were not of such quality or quantity as to warrant the conclusion that the jury excluding Hudson County participation therein and drawn exclusively from juror lists in Burlington County failed to represent a fair cross-section of the community. He also rejected defendant's other ground for the petition  that the district in which he had been tried was not previously ascertained by law; rather he accepted as valid the State's argument that a state trial in the federal judicial district in which the offense occurred was sufficient compliance with that constitutional mandate. Defendant appeals.
We commence consideration of the issues raised herein with the Sixth Amendment to the United States Constitution (binding on the states, Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968)), wherein are enumerated several procedural rights guaranteed an accused "in all criminal prosecutions." Among the enumerated guarantees is the right to be tried by "an impartial jury of the State and district wherein the crime shall have been committed * * * which district shall have been previously ascertained by law * * *." One essential characteristic of an impartial jury identified by the United States Supreme Court is that it be drawn from a fair cross-section of the community.[1]Taylor v. Louisiana, 419 U.S. 522, 526-531, 95 S.Ct. 692, 695-698, 42 L.Ed.2d 690, 696-698 (1975).
*353 The so-called "cross-section requirement" implicit in, but not expressly referred to in the Sixth Amendment, does not entitle those accused of crime to a jury of any particular composition; rather the methods chosen for jury selection, the "jury wheels, pools of names, panels or venires from which juries are drawn must not [be designed to] systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." 419 U.S. at 538, 95 S.Ct. at 702, 42 L.Ed.2d at 703. Hence, jury selection methods which excluded all women from panels from which petit juries were drawn were held constitutionally offensive, and this where the defendant concerned was male. Taylor v. Louisiana, supra. Systematic exclusion of blacks from jury panels was similarly condemned at the suit of a Caucasian in Peters v. Kiff, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972). See Williams v. Florida, 399 U.S. 78, 100, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970). Although eschewing any intention of imposing upon states any particular conception of the proper source of jury lists, that court nonetheless required that whatever method is chosen, such lists must reasonably reflect "a cross-section of the population suitable in character and intelligence for that civic duty." Brown v. Allen, 344 U.S. 443, 474, 73 S.Ct. 397, 416, 97 L.Ed. 469, 498 (1953).
None of these cases, or those similar thereto, purports to specify the geographical area from which jurors must be drawn since in none of these cases was venue of the trial in dispute. Each accepted the venue as given and the sole concern was whether the method for jury selection operated to exclude "distinctive groups" in that community and "thereby fail to be reasonably representative [of that community]." Taylor v. Louisiana, supra.
*354 Here the concerns are different. Defendant does not contend that the methods selected for choosing his Burlington County jury operated or were designed to exclude any distinctive racial, ethnic or social group present within the Burlington County population. Indeed, Zicarelli v. Gray, supra, held that the methods used comported with Sixth Amendment requirements. Rather, defendant contends that the Burlington County pool from which his jurors were chosen failed to mirror in its essential demographic characteristics a pool similarly drawn from the Hudson County citizenry. It was in pursuit of this theory that he produced, for consideration by the trial judge on his post-conviction petition, demographic statistical data derived from the 1970 U.S. Census figures which demonstrated some undeniable differences between the two groups.
We agree with the trial judge in his evaluation of these proofs and as to his conclusions rejecting defendant's thesis. Although Hudson County is largely urban in character while Burlington County is predominantly rural, although there are differences between the population of the two counties in terms of education, income and occupation, no expert proof was adduced suggesting that such differences would have any bearing upon the jurors' inclinations as to the evaluation of evidence submitted for their consideration. Moreover, nothing in such statistics suggests that residents of Hudson County constitute a distinctive group in the community such that their exclusion would deprive a jury drawn without them of its cross-sectional quality in violation of Sixth Amendment guarantees. Further, defendant has never even suggested at any of the many stages of appeal that Burlington County was specifically chosen by the State as the venue of his trial in order to obtain a jury more willing to convict.
More fundamentally, however, we disagree with defendant's underlying thesis pursuant to which the statistical data concerning demographic differences between Hudson and *355 Burlington Counties was submitted. According to defendant, Hudson County's demographic characteristics remain the standard by which to measure the representative quality of the Burlington County panel from which his jury was drawn notwithstanding the Third Circuit's holding that trial of defendant's Hudson County's offenses by a Burlington County jury did not offend Sixth Amendment guarantees. It is with this conception of the cross-section requirement  that the panel from which a petit jury is drawn must reflect a panel drawn from the county where the offense occurred  that we have our principal disagreement.
As noted in Zicarelli v. Gray, supra, "the petit jury was drawn from both the state and federal judicial district within which the crimes occurred, and the state-and-district guarantee of the Constitution promises no more." 543 F.2d at 482. Nothing therein suggests a limitation to this ruling applicable where the selected venue differs in its demographic makeup from the county in which the crimes occurred. Had such been the court's intended meaning, we have no doubt that such a limitation would have been made clear. The paucity of supporting decisional authority convinces us, moreover, that such a requirement is not included within the Sixth Amendment mandates.
The cases which do appear to so hold, and upon which defendant relies, are either distinguishable or unpersuasive and in no event are they binding upon us.
In Alvarado v. State, 486 P.2d 881 (Alaska Sup. Ct. 1971), the court confronted circumstances unique to Alaska. Defendant, an Aleut, was indicted for rape committed in a remote rural area, Chignik, where he had lived more than half of his life, and was tried for that offense in Anchorage by a jury drawn from within a 15-mile radius in that city. The site of the offense, approximately 450 air miles south-west of the area from which the jurors were drawn, contained only 100 persons of whom 95 were natives. Almost everyone in the village was related. No television, telephones, *356 running water, roads or cars serviced the settlement. Access was by means of weekly plane. The expert evidence established the vast cultural gulf which separated the residents of the village from the cosmopolitan population of Anchorage and its environs, and the singular cultural characteristics, social, moral and sexual, which distinguished the native residents from those in the area from which the jury was drawn. As noted by the court:
The gap stretching between these two distinct classes of community is of far greater magnitude than that which normally separates city from city or small town from city elsewhere in the United States. [At 900]
In our view, Alvarado, premised on these unique factual circumstances, lacks all precedential force. The differences between the Chignik-Anchorage cultural chasm and the Burlington County-Hudson County demographic gully are not mere differences in degree, but in kind; no legitimate analogy can be drawn between the two. Doubtless, the Alvarado court was responding to the perceived injustice visited upon a defendant who was being tried by a jury from another culture for commission of an offense within it. Clearly, the expert proof submitted there amply justified that court in concluding that such vast cultural, racial and ethnic differences would influence the essential decision making function entrusted to the jury. The demographic differences between Hudson and Burlington Counties do not even begin to approach the problem encountered in Alvarado, and its ruling, premised squarely upon the detailed factual picture presented, has no application to the present case.
People v. Jones, 9 Cal.3d 546, 108 Cal. Rptr. 345, 510 P.2d 705 (Sup. Ct. 1973), is equally inapposite. There, it was held that Sixth Amendment considerations require that a petit jury be drawn from an area which includes the district in which the crime was committed  a holding at direct variance with the one which binds us, as the law of this case, Zicarelli v. Gray, supra. There too, however, racial considerations *357 intruded although the court disclaimed their influence; nonetheless, since they received careful mention, we are not at all convinced that they did not exert some influence, albeit not a dispositive one. In any event, the opinion was by a sharply divided court and we candidly admit agreement with the three dissenting justices. Cf. Maryland v. Brown, 295 F. Supp. 63 (D.C. Md. 1969).
Underlying the Alvarado and Jones opinions is, we believe, a conception of a jury's role which may well differ from the New Jersey conception thereof. Thus, inherent in both opinions, although not expressly referred to at any place therein, is judicial recognition and indeed approval of the view that a jury provides the means by which community attitudes and mores affect conclusions of culpability and the degree thereof, and that the attitudes and mores of the community in which the crime occurred are hence essential ingredients in a jury's formulation of a proper and just verdict. By this view, the Alvarado and Jones courts vested an accused with a right to benefit from the attitudes toward his offense prevailing in the community in which it was committed.
This issue of considerable jurisprudential importance, concerning a jury's role in relation to vicinage requirements, has never to our knowledge been confronted in New Jersey. What indications exist, however, suggest a contrary view. For example, in State v. Jackson, 43 N.J. 148 (1964), the court noted:
* * * There was a time in early English history when jurors were men of the neighborhood who were called in to state the facts as they knew them. They were, in reality, witnesses. But by the fifteenth century this approach was abandoned and jurors have since been selected to hear witnesses presented by the parties and to decide on the basis of the testimony given by the witnesses. The jurors must be carefully selected with an eye towards their ability to determine the controverted issues fairly and impartially; in the words of Justice Blandin in State v. White, 105 N.H. 159, 196 A.2d 33, 34 (1963), the trial court should see to it that the jury is as nearly impartial "as the lot of humanity will admit." See 1 Hyatt, Trials § 687, p. 711 (1924); cf. Wright v. Bernstein, 23 *358 N.J. 284 (1957), where, in a civil case for damages, Justice Oliphant made the following comments which have even greater pertinence in this capital case:
"The fundamental right of trial by a fair and impartial jury is jealously guarded by the courts. The jury is an integral part of the court for the administration of justice and on elementary principles its verdict must be obedient to the court's charge based solely on legal evidence produced before it and entirely free from the taint of extraneous considerations and influences. The parties to the action are entitled to have each of the jurors who hears the case impartial, unprejudiced and free from improper influences. Panko v. Flintkote Co., 7 N.J. 55, 61 (1951)." 23 N.J. at pp. 294-295. [at 157-158]
Following this approach to its logical conclusion, we could with some justification conclude that the most effective means of insuring jury impartiality, and hence its freedom "from the taint of extraneous considerations and influences," is by selection of veniremen from areas remote from the scene of the crime, as is frequently done, at an accused's behest, to escape extraneous influences which tend to an accused's prejudice. Clearly, requirements of vicinage, the representative character of a jury panel and those of impartiality often fight rather than complement one another. See People v. Jones, supra, 108 Cal. Rptr. 345, 510 P.2d at 716 (dissenting opinion); see also, 5 Rutgers Camden L.J. 514 (1974). In any event, the present case presents an insufficient basis on which to resolve problems concerning vicinage as against impartiality; demographic differences between Hudson and Burlington Counties are simply insufficient to call for its resolution.
Commission of an indictable offense in Hudson County is an offense against the State of New Jersey, not the County of Hudson. Although, for considerations of administrative efficiency and the fair allocation of law enforcement resources, offenses committed in a county are ordinarily prosecuted there, that course of action in no way converts the assignment of venue and the concomitant source from which a jury is selected into a constitutional matter. Apart from such normal venue requirements (see R. 3:14-1), Hudson *359 County would no more have prior claim to the trial of Zicarelli's Hudson County offenses than Zicarelli would have to have his offenses tried before a jury drawn from that county. Even a jury drawn on a state-wide basis, a procedure with which defendant could not legitimately quarrel, would not be from a pool mirroring Hudson County's demographic profile; such a jury would nonetheless clearly meet Sixth Amendment cross-sectional requirements.
In this connection it must be emphasized that the prosecutorial entity which indicted defendant and tried the case was specifically created by the Criminal Justice Act of 1970, N.J.S.A. 52:17B-97 et seq., to deal with criminal behavior having state-wide impact. N.J.S.A. 52:17B-98. The conduct triggering state rather than merely local action transcends parochial interests. As noted by our own Appellate Division in a prior Zicarelli appeal:
The state grand jury * * * was created because of the need to investigate and prosecute crime without regard to county boundaries. It was premised on the notion that the institution of the state grand jury can cope with the problems of modern law enforcement only if it be relieved of outmoded concepts of jurisdiction and vicinage which too often have imposed an artificial restraint on grand jury probes and a particular burden upon inquiries into syndicated criminal activities. [State v. Zicarelli, 122 N.J. Super. 225, 234-235 (App. Div. 1973), certif. den. 63 N.J. 252 (1973), cert. den. 414 U.S. 875, 94 S.Ct. 71, 38 L.Ed.2d 120 (1973)].
Implicit in defendant's position is the absurd proposition that a Burlington County jury could impartially try him for an offense committed there, but a jury similarly drawn loses its impartiality when the offense which they are trying happens to have been committed in Hudson County. We reject such arguments as having little relevance to the essential truth finding function of a jury trial. The jury drawn is either impartial or not; its impartiality, however, is in nowise dependent upon the locus of the crime it is considering or on the entirely accidental boundary lines of our county setup. We cannot but conclude that the jury which convicted *360 Zicarelli was drawn from a pool which reflected a cross-section of the community, that is, Burlington County, and hence comported with every Sixth Amendment command.
As to the second issue raised, that in which defendant contends that he was not tried in a district "previously ascertained by law" in violation of Sixth Amendment guarantees, we are in agreement with the conclusion of the trial judge and affirm. The district referred to in this phrase is the federal judicial district embracing the area of the trial. New Jersey constitutes such judicial district. Insofar as the Sixth Amendment is concerned, trial therein satisfies this requirement.
Moreover, New Jersey's State Grand Jury Act (N.J.S.A. 2A:73A-1 et seq.) creates a state-wide district for all actions brought as a result of state grand jury action. The venue of all such trials is left by statute to the sound discretion of an assignment judge designated by the Chief Justice of New Jersey. N.J.S.A. 2A:73A-2; State v. Zicarelli, 122 N.J. Super. 225 (App. Div. 1973), certif. den. 63 N.J. 252 (1973), cert. den. 414 U.S. 875, 94 S.Ct. 71, 38 L.Ed.2d 120 (1973). Since the area in which venue can be assigned coincides with the federal judicial district of New Jersey, the venue provisions of N.J.S.A. 2A:73A-1 et seq. are not in violation of Sixth Amendment guarantees.
Affirmed.
NOTES
[1] Although the impartiality and cross-section requirements are interrelated, they do not import the same quality. Impartiality refers to the individual and collective freedom of the petit jury trying the case from influences extraneous to the evidence which would influence their consideration of the case. The cross-section requirement refers to jury panel composition from which petit jurors are drawn, the need that significant and distinctive groups not be excluded from participation. A representative jury, one complying in every way with the cross-section requirement may, of course, be a biased one; an impartial jury may not be representative. Both concepts, however, fall generally within the concerns of impartiality.