OPINION OF THE COURT
W. Dennis Duggan, J.
In this case, there are two issues of law which must be determined. First, can a person willfully violate an order of protection by the concerted conduct of others acting on his behalf. Second, can a mistake-of-fact defense against the element of willfulness be based on a subjective, as opposed to objective, belief. Neither question has specific written precedent in this state. The court finds that accessorial conduct can support a finding of a violation of an order of protection and, under the facts of this case, a willful violation, and that a mistake-of-fact defense must meet the reasonable basis test established by the Court of Appeals in People v Goetz.[1]
This case started when Mary Leggio filed a family offense petition against her husband. This petition resulted in a final order of protection that required Mr. Leggio to “stay away from the current residence of Petitioner.” Three months later, Mrs. Leggio filed a violation petition. She alleged that her husband entered her residence with three or four other people, that they caused damage to the property and removed some of her belongings.
After a hearing, the court found that Mrs. Leggio failed to prove that Mr. Leggio actually entered the residence, or that he was present at all during the incident. The court rejected the factual defense that the home was not Mrs. Leggio’s “current residence” so as to avoid liability on that technical point. The court did find that Mr. Leggio’s brother-in-law, his friend and her two teenage children did go to the house and removed Mrs. Leggio’s personal property. That issue was not disputed because Mr. Leggio was relying on his claim that Mrs. Leggio had abandoned the residence, in which case his or any other person’s presence at the residence would be inconsequential to a “stay away from current residence” provision of an order of protection. With this finding, the court must next determine if the acts of the respondent’s friends can be imputed to the respondent and thereby impose a violation finding upon him personally and if his mistake-of-fact defense, concerning *573 whether the house was abandoned, can insulate him from a finding of willfulness.
The general legal concept underlying this case is that, for most human enterprises, a person may act through an agent. The specific question to be answered is whether, in the context of a civil proceeding, an agent’s behavior can support the imposition of punitive sanctions on a principal where the agent’s behavior violates provisions of an order of protection that restrict, and are specific to, the principal’s personal behavior.
The civil law of agency may support a finding that a principal (in this case, the respondent) willfully violated an order of protection based on the acts of his agents. However, because article 8 violation proceedings are quasi-criminal, a more solid approach is to base this analysis on the principle of accessorial liability as set forth in article 20 of the Penal Law.[2]
Penal Law § 20.00 reads as follows: “When one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof he [or she] solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct.”
Article 20 has three elements: First: There must be a person (the agent) who engages in conduct which constitutes an offense. In this case, the friends and relative of Mr. Leggio did indeed engage in an offense by entering Mrs. Leggio’s residence and removing her property. Their actions most certainly constitute criminal trespass and perhaps even burglary.[3] Second: There must be a person (the principal) who requests the agent to engage in the conduct. In this case, there is no dispute that the respondent requested that his friends go to the residence to remove property. Third: The principal must act with the mental culpability required for the commission of the offense.
*574 In this case, the conduct which constitutes the offense is the entering of the residence. The mental state of the agent is irrelevant as Penal Law § 20.00 only requires that the agent engage in the physical act that is the essence of the offense.[4] It is no defense that Mr. Leggio’s friends could not violate his wife’s order of protection because it was specific to him. Penal Law § 20.05 (3) specifically eliminates that defense.[5] The court finds that Mr. Leggio did, in fact, request his friends to enter the residence to remove certain property and that is exactly what they did. Accordingly, the first two prongs of the accessorial liability test are satisfied in a quite obvious fashion.
The establishment of the mental culpability prong is, however, not quite so obvious. Did Mr. Leggio act with the necessary culpability if he thought it was permissible to have his friends go to the house because he had a belief that his wife had vacated the residence? And, to support a mistake-of-fact defense, need it be a reasonable belief or could that belief be fanciful? To analyze this aspect of Mr. Leggio’s conduct it is instructive to examine the behavior that constitutes criminal trespass, which is essentially what a stay-away provision of an order of protection prohibits. “A person is guilty of criminal trespass in the second degree when he [or she] knowingly enters or remains unlawfully in a dwelling.”[6] “A person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when he [or she] is aware that his [or her] conduct is of such a nature or that such circumstance exists.”[7] The specific question posed here is, whether Mr. Leggio, through his agents, entered a building, knowing it to be unlawful to do so, if he believed his wife had vacated the premises, in which case the “stay away from cur *575 rent residence” provision of the order of protection, at least in his mind, no longer applied.[8]
The modern analysis on this point of law can begin with Matter of Mario Y.[9] In Mario Y., a juvenile was charged with reckless endangerment because he fired a rifle into a house. The juvenile claimed he could not be convicted of that crime because he believed the house was unoccupied since it was the middle of the day when most people were at work. At the time of the shooting, the home was occupied by two children, their mother and grandmother. His belief, the respondent contended, exculpated him under the mistake-of-fact defense contained in Penal Law § 15.20 (1) (a). The Third Department disagreed and held:
“Appellant’s assumption that the occupants of the *576 residence were at work is not such a mistaken belief of fact as would excuse his conduct. This assumption was not based upon any known fact as to the activities of the occupants of the residence on that day, or upon any observance or investigation of the situation at the residence. Appellant’s total disregard of the possibility that someone might be home constituted such a gross disregard of the risk and such a gross deviation from the standard of conduct that a reasonable person would observe in the situation as to constitute reckless endangerment within the meaning of the statute.” (Mario Y. at 965 [emphasis added].)
On its face, this decision holds that the defendant’s mistake-of-fact belief must have a reasonable basis. However, that might be drawing too bright a line for this decision to handle. Reckless behavior has two basic elements. First, there must be a disregarding of a substantial risk that a reasonable person would regard. Second, the defendant must be aware of that risk. The mistake-of-fact defense applies to the awareness element. Mario Y. does not directly answer the question of whether the awareness prong of the reckless behavior standard can be based on an objective or subjective belief. Instead, the Court seems to have stirred together the awareness of the risk factor with the substantiality of the risk factor and then required a defendant to make some type of diligent investigation into the facts if he wishes to get a jury charge on that defense. Such an investigation would, by its very nature, establish both the awareness element and the substantiality of the risk element. The result in Mario Y. is certainly warranted on the law and the facts of the case, but how to apply its holding to a statute that involves commissions or omissions that are done knowingly and not recklessly is not so clear.
The next major step in the evolution of the law on this issue came from the Court of Appeals in People v Marrero.[10] In Marrero, a Federal correction officer was charged with the illegal possession of a handgun in New York City. He tried to avoid criminal liability by claiming that his position as a Federal correction officer exempted him from New York’s handgun restrictions. This four to three decision is fairly technical and *577 the majority opinion is difficult to understand.[11] However, all possible readings of both the majority and dissenting opinions in Marrero lead inescapably to the conclusion that a mistake-of-law defense cannot be based on a subjective belief.
The Fourth Department next spoke on the mistake-of-fact defense in People v Rypinski.[12] In Rypinski, the defendant, while intoxicated, pulled a rifle from the back seat of his car and shot the victim. The defendant offered as a defense his belief that the gun was not loaded. The Appellate Division, in holding that the jury should have been charged on the mistake-of-fact defense with respect to the reckless assault count, ruled that the defendant’s belief about the readiness of the gun need not be reasonable to warrant a charge on the mistake-of-fact defense. The Court’s reasoning went like this: (1) The Court of Appeals decision in Marrero held that New York’s mistake-of-law defense was birthed from a similar provision of the Model Penal Code. Accordingly, the Model Penal Code’s mistake-of-fact defense should be the model for New York’s mistake-of-fact defense. (2) The commentary to the Model Penal Code noted that a mistake of fact need not be based on a reasonable belief in order to exculpate a defendant of a crime; a subjective belief will suffice. (3) Therefore, New York’s mistake-of-fact defense does not require that the defendant’s belief as to the existing facts at the time of the commission of the crime must be reasonable. This is a curious holding in that it defaults its legal rationale to the commentator of the Model Penal Code and the Court’s holding is directly contrary to the parallel rationale of the Court of Appeals holding in People v Marrero, that no belief, reasonable or otherwise, would get the defendant a charge on the mistake-of-law defense. With the holding in Rypinski, it is understandable that the Fourth Department did not cite the Court of Appeals unanimous decision in People *578 v Goetz.[13] In Goetz, the famous subway shooting case, the Court held that the belief by the defendant that deadly physical force was justified had to be reasonable, not just to him, but to a reasonable person in the defendant’s circumstances. The Court in Goetz specifically held that the Legislature declined to follow the Model Penal Code down the path of allowing subjective beliefs to form the basis of a justification defense.
The First Department weighed in on the mistake-of-fact issue in People v Reynoso.[14] Reynoso based his defense on a claim that he thought there were blank bullets in the gun with which he shot the victim. The Court cited favorably to the Third Department’s decision in Mario Y.[15] and held that a belief, uninvestigated, does not equate to a mistake of fact. The Court with the following language suggests that a mistake-of-fact defense must be based on a reasonable belief (at 454-455):
“Defendant’s information that the bullets were blanks’ was third hand, and he did not test them or otherwise verify their nature. Such disregard of the possibility that the bullets were live was a gross deviation from the standard of conduct that a reasonable person would have observed in the situation * * * Defendant’s claimed mistaken belief that the bullets were harmless was not based on a known fact regarding their nature, and therefore was not a Tactual mistake’ within the meaning of Penal Law § 15.20 (1) (a).”
In People v Grinage,[16] the Fourth Department followed its earlier holding in People v Rypinski.[17] The Court ruled that a mistake-of-fact defense need not be based on a reasonable belief, and noted its disagreement with the contrary analysis of the First Department in People v Reynoso[18] and the Third Department in Matter of Mario Y.[19]
The disagreement among the Departments[20] on the mistake-of-fact defense, coupled with the Court of Appeals’ narrowly focused holding in Marrero concerning a mistake-of-law defense, leaves the trial bench listening to an uncertain *579 trumpet.[21] Because no Appellate Division has specifically ruled on the objective versus subjective nature of the belief needed to support a mistake-of-fact defense in the context of an offense which requires the mental culpability of “knowingly,” this court adopts the rationale set forth in People v Goetz [22] In Goetz, the Court of Appeals held that the “justification statute imposes a two-part test which involves both subjective and objective components.”[23] The subjective component examines whether the defendant had a genuine belief that the use of force was justified. The objective component examines whether a reasonable person, similarly confronted, would also have held the same belief as the defendant.[24] The Goetz Court, speaking unanimously, noted that the New York Penal Law departed from the Model Penal Code’s subjective belief standards:
“We cannot lightly impute to the Legislature an intent to fundamentally alter the principles of justification to allow the perpetrator of a serious crime to go free simply because that person believed his actions were reasonable and necessary to prevent some perceived harm. To completely exonerate such an individual, no matter how aberrational or bizarre his thought patterns, would allow citizens to set their own standards for permissible use of force. It would also allow a legally competent defendant suffering from delusions to kill or perform acts of violence with impunity, contrary to fundamental principles of justice and criminal law.”[25]
This rationale is compelling. If a subjective mistake-of-fact belief were allowed to absolve a person from criminal responsibility, the societal consequences, shielded by the Goetz rule in the justification area, would be unchecked in the potentially much broader area involving a mistake-of-fact defense. If subjective belief, even genuinely held, were all that was required an individual could be completely exonerated “no matter how aberrational or bizarre his thought patterns” were. Accordingly, the two-part Goetz rule should apply to a mistake-of-fact defense.
*580 In applying the Goetz test to this case, the court finds that Mr. Leggio did not establish either the subjective or objective prong of the test. His friend, testifying in his behalf, said that she went to the petitioner’s residence for Mr. Leggio because Mr. Leggio knew the order prevented him from going there, proving that he lacked a genuine belief that his wife had vacated the residence. Even had the respondent established that he had a genuine belief that his actions were permissible, he has failed to establish the objective prong of the Goetz test.
The court credits the testimony of Mrs. Leggio that she had not moved out of the residence. The objective facts concerning the physical state of the residence support a finding that a reasonable person would conclude that the residence was still occupied. Under the circumstances, the court finds that the respondent acted at his peril because he took no steps to determine the status of the occupancy of the residence and, therefore, had no basis for a belief that his wife had moved.[26] A person cannot intentionally keep himself ignorant of a state of facts and then claim that he is immune from responsibility for his actions because he did not know the existing circumstances.
Accordingly, based on the above review of the law, the court finds that the evidence supports, clearly and convincingly, that the respondent willfully violated the order of protection and a dispositional proceeding will be held based on this finding.

. (68 NY2d 96 [1986].) Goetz involved the issue of the required state of mind of a defendant necessary to advance a justification defense under Penal Law article 35.

. A violation of an order of protection exposes a person to six months of incarceration (Family Ct Act § 846-a) which, unlike most contempts, cannot be purged. In People v Wood (95 NY2d 509 [2000]), the Court of Appeals applied the “Blockburger rule” to determine that concurrent Family Court violation proceedings and Penal Law contempt proceedings implicate double jeopardy standards. “[A] finding of contempt pursuant to Family Court Act article 8 is punitive in nature, triggering double jeopardy protections * * * We have recognized that despite the ‘civil’ legislative label * * * section 846-a, which provides for a penalty of incarceration for violation of Family Court orders, is punitive in nature.” (Wood, at 513 n 3.)

. Penal Law §§ 140.05, 140.15.

. Penal Law § 20.05 (1) is an exception to the definition of conduct contained in Penal Law § 15.00 (4) which defines conduct as including behavior plus the accompanying mental state. See CJI(NY) 2d, Accessorial Liability: “The People have the burden of proving beyond a reasonable doubt that the defendant acted with the state of mind required for the commission of the crime, and either personally, or by acting in concert with another person, committed each of the remaining elements of the crime.” (Emphasis added.)

. Penal Law § 20.05 (3) states: “In any prosecution for an offense in which criminal liability of the defendant is based upon the conduct of another person * * * it is not a defense that * * * : The offense in question, as defined, can be committed only by a particular class or classes of persons, and the defendant, not belonging to such class or classes, is for that reason legally incapable of committing the offense in an individual capacity.”

. Penal Law § 140.15.

. Penal Law § 15.05 (2).

. A violation of an order of protection must be willful. Black’s Law Dictionary defines willful as “[vjoluntary and intentional, but not necessarily malicious” (1593 [7th ed 1999]). In this case, there is no legal difference between acting willfully and acting knowingly. The modem development on Federal law on this issue and on the law of mistake-of-fact and mistake-of-law defenses starts with Screws v United States (325 US 91 [1945]) and runs through United States v Guest (383 US 745 [1966]), United States v Ehrlichman (546 F2d 910 [1976]) and United States v Barker (546 F2d 940 [1976]). The Ehrlichman and Barker cases arose out of Watergate-related scandals. The defendants were charged with conspiring to burglarize the offices of Daniel Ellsberg’s psychiatrist. Ellsberg was the leaker of the Pentagon papers and the conspirators sought information to discredit him. The defendants advanced a defense that they had a good faith belief that national security concerns exempted them from the warrant requirements of the Fourth Amendment. The appeals courts disagreed and held that a good faith belief did not get them the benefit of this defense.

. (75 AD2d 954 [3d Dept 1980].) Probably the most famous New York case on the mistake-of-fact defense is People v Weiss (276 NY 384 [1938]). Weiss was an associate of Ellis Parker, the most famous police detective in America. Parker believed he was hot on the trail of the real kidnapper of the Lindbergh baby. Parker recruited the defendants to arrest a Paul H. Wendel in Brooklyn and bring him back to Parker in New Jersey where they intended to extract a confession from Wendel. To insulate the defendants from kidnapping charges, Parker “deputized” them as law officers. His deputation did not hold up in New York but the defendants tried to introduce evidence at trial of their ersatz deputy status as a mistake-of-fact defense to the “without authority of law” element of kidnapping. The court disallowed the evidence. The Appellate Division agreed (252 App Div 463) but the Court of Appeals held that the defendants should have had the chance to establish that they had a good faith belief that they were acting with lawful authority. This holding would lend support to the ruling in this case that the two-prong Goetz ruling should be used. However, in 1938, there was no statutory mistake-of-fact defense and it is not clear that the Court in Weiss used the term “good faith belief’ to mean a subjective or objective belief. Accordingly, this court starts its analysis with post-1965 cases, which is the year the new Penal Law was adopted.

. 69 NY2d 382 (1987).

. The nub of the Marrero holding is this: Penal Law § 265.20 (a) (1) (former [a]) exempted peace officers from the illegal handgun proscriptions of Penal Law § 265.02. GPL 2.10 (25) defined “peace officer” as including “correction officers of any state correction facility of any penal correctional institution” (emphasis added). The dissent held that the defendant’s reliance on the language emphasized above could constitute a reasonable mistake of law and, accordingly, a question to be resolved by the jury. The majority held that such a defense is available only if the established law coincided with the defendant’s belief at the time of the offense and then later was the law determined to be incorrect. It didn’t and, accordingly, Marrero was not entitled to a charge on the issue.

. 157 AD2d 260 (1990).

. 68 NY2d 96 (1986).

. 231 AD2d 454 (1996).

. Supra.

. 269 AD2d 780 (2000).

. Supra.

. 231 AD2d 454 (1996).

. 75 AD2d 954 (1980).

. The Second Department has not yet ruled on this issue.

. 1 Corinthians 14:8.

. Supra.

. Matter of Y. K., 87 NY2d 430, 433 (1996).

. See also, People v Wesley, 76 NY2d 555 (1990); People v Craig, 78 NY2d 616 (1991).

. Goetz, supra.

. This finding alone would meet the uninvestigated belief standard set forth in Matter of Mario Y. (supra) and People v Reynoso (supra).